**NATIONAL LABOR RELATIONS BOARD v. HOLTVILLE ICE & COLD STORAGE CO. et al.**

No. 10695.

Circuit Court of Appeals, Ninth Circuit.

Feb. 28, 1945.

Alvin J. Rockwell, Gen. Counsel, Malcolm F. Halliday, Associate Gen. Counsel, David Findling, William F. Scharnikow, and Ivar Peterson, Attys., N.L.R.B., all of Washington, D. C., for petitioner.

Clarence B. Smith, of El Centro, Cal., for respondent Holtville Ice & Cold Storage Co.

Whitelaw & Whitelaw, of El Centro, Cal., for respondents Associated Farmers and H. T. Osborne.

Before GARRECHT, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Upon charges filed by a local union affiliated with the American Federation of Labor, and following the usual procedure under § 10 of the National Labor Relations Act,[1] the petitioner issued its decision and order directed toward the respondents and now asks our decree of enforcement.

The respondent Holtville Ice Company manufactures and distributes ice. During 1941 and 1942 it sold nearly all its product to vegetable packers in the Imperial Valley, California. It owns packing sheds there and leases them to purchasers of its ice. In these sheds the vegetables are packed and placed in railroad refrigerator cars for shipment. In 1942 not less than 75% of the cars of vegetables iced with the Company's product were shipped in interstate commerce. Respondent Associated Farmers is a nonprofit corporation composed of

1 29 U.S.C.A. § 160.

farmers, business and professional people of Imperial Valley. Respondent Osborne is its Secretary-Manager. The purpose of Associated Farmers, according to its articles of incorporation, is to preserve American institutions and ideals, combat subversive doctrines and the dictatorship of individuals or groups, and to promote and protect the economic and agricultural welfare of citizens of California. It came into existence in 1936 as the result of labor disturbances in the agricultural districts claimed to have been fomented by "radical and/or Communistic agitators." It is financed by contributions of its members, of whom the Ice Company was one.

The Board found that the Ice Company, and the Associated Farmers and Osborne, acting in its interest, questioned employees of the Ice Company with respect to their membership in the complaining union, discouraged adherence thereto, and dominated and supported an unaffiliated association of the Ice Company's employees. It found that respondents thereby committed unfair labor practices within the meaning of § 8 (1) and (2) of the Act, 29 U.S.C.A. § 158 (1, 2); also that the Ice Company transgressed § 8(1) and (3) in that it discriminated with respect to the hire and tenure of certain of its employees, seven in number, because they had applied for membership in the complaining union. The usual cease and desist order was entered, and the Ice Company was directed to withdraw recognition from and to disestablish the dominated association and to offer reinstatement with back pay to the employees discriminated against. The Associated Farmers and Osborne, when acting in the interest of the Ice Company or of any other employer, were ordered to cease and desist from their unfair practices, and to refrain from soliciting and collecting funds from the Ice Company or from any other employers for use in interfering with the rights of employees guaranteed in § 7 of the Act, 29 U.S.C.A. § 157.

■ 1. The Board clearly had jurisdiction of the case. The activities of the Ice Company closely affect commerce. A stoppage in the supply of ice used to refrigerate shipments of vegetables destined for places outside California would tend materially to obstruct the flow of commerce. Cf. North Whittier Heights Citrus Ass'n v. National Labor Relations Board, 9 Cir., 109 F.2d 76; National Labor Relations Board v. Santa Cruz Fruit Packing Co., 9 Cir., 91 F.2d 790, affirmed 303 U.S. 453, 58 S.Ct. 656, 82 L.Ed. 954.

■ 2. On the merits, while there is considerable conflict in the testimony and differing inferences may be drawn from it, the Board's findings are substantially supported. No more than a summary of the showing need be attempted.

The Ice Company's employees varied in number, depending on the season, there being about thirty-five men employed at the peak. The slack season ran from August until late October. On September 26, 1941, a number of the employees visited the office of the Truck Drivers, Warehousemen and Helpers' Union 898, affiliated with the AFL, and ten of them signed applications for membership. Shortly thereafter Pool, plant superintendent, told Willard, the president of the Ice Company, about the applications made by some of the men. Both Pool and Smith, the office manager, questioned employees about their union affiliations, and Pool told several of them that Willard was opposed to the Union and that they were making a great mistake in joining it. Willard approached respondent Osborne of the Associated Farmers and informed him that there was some union trouble at the plant, asking Osborne to interest himself in the matter. Osborne promised to make an investigation and told Willard to do nothing in the meantime. Osborne accordingly talked to several of the men, urged them to back out of the Union, and told them that he would allow no union to come into the Valley and that Willard would close the plant rather than allow it to be organized. To one or two of the men who appeared lukewarm toward Union 898 Osborne suggested that they form an unaffiliated association, pointing out that this had been done in several other Valley concerns. He referred them for help to one Whitelaw, counsel for Associated Farmers and supplied them with forms of constitution and by-laws of unaffiliated associations which Associated Farmers had helped set up.

Osborne and Whitelaw assisted a group of the employees in the organization of an association (called Holtville Ice and Cold Storage Company Employees Association), and on October 30 the latter held its first meeting. On November 25 a collective bargaining contract, dated November 1, was made between the Association and the Ice Company. This contract was renewed on November 1, 1942, and was in force at the

170

time of the Examiner's hearing. The evidence is that Willard agreed to the contract without requesting a showing that the Association represented a majority of the men, and without so much as a day's deliberation.

Meanwhile, on October 28, spokesmen for the group of eleven who has signed up with Union 898 met with Willard and told him they were the duly elected representatives of a majority of the employees. They asked him to bargain with them on the basis of a proposed contract which they had previously submitted to office manager Smith. Willard replied that he had not seen the contract and that he could do nothing without consultation with other directors of the Company.[2]

When the Ice Company resumed its regular operations on October 29, Pool and Willard determined what employees should be recalled to work during the busy season. It was at this time that the Ice Company, as the Board found, discriminated in regard to hire and tenure of employment. Seven of the men who had signed applications with Union 898 were denied reinstatement to their old jobs. The seven had been with the Ice Company from two to fifteen seasons, and had an average of about seven years' employment each with the Company. The latter contends that the failure to rehire these men was based on changes made in its method of operation and on a reduction in the number of men needed for the season. Other reasons are also advanced for the failure to employ one or another of the group.

We need not go into the disputed details; enough to say that the Board's finding of unlawful discrimination is substantially supported. The payrolls of the Ice Company for the first half of 1942 show that not less than five and as many as eleven new men were employed during this period, some of whom were less experienced than those laid off. The seven not reemployed were the only ones who, on October 29, were still loyal to Union 898. We are satisfied that the manner of compliance with this phase of the order can be fairly worked out with the Board's representatives.

■ 3. The objection of respondents Associated Farmers and Osborne is confined to the claim that the former is not an employer within the meaning of § 2(2) of the Act, 29 U.S.C.A. § 152(2), and should not have been so treated by the Board. We do not agree. The term "employer" is defined as including "any person acting in the interest of an employer, directly or indirectly." Osborne acted throughout on behalf of Associated Farmers and in the interest of the Ice Company. Under the showing made, both he and Associated Farmers fall easily within the statutory classification. National Labor Relations Board v. Northwestern Mut. Fire Ass'n, 9 Cir., 142 F.2d 866; National Labor Relations Board v. Long Lake Lumber Co., 9 Cir., 138 F.2d 363.

The petition of the Board is granted and the usual enforcement decree will be entered forthwith.

---

[2] The Board found that there was no illegal failure to bargain collectively with Union 898, since it was not shown to represent a majority of the employees at the time.