Henry Epstein, J.
Five petitions have been addressed to this court seeking to punish defendants for contempt of court. The contempt charged is willful disobedience to an order of the court (17 Misc 2d 727). Injunctive relief is also sought against the picketing by defendants and the union. On the argument of these motions this court gave counsel for both sides the following comment of the court with questions to be answered.

“Remarks to Litigating Counsel

‘1 There have been few issues before the court in recent times as fraught with the public interest, and as likely to have lasting effect on the public welfare as the one now before this court. It is vital therefore that the issue be determined so that, within the applicable laws, the public welfare may best be protected.
“ The interests involved in the instant case are several, though partially overlapping — namely: The Public, The Patients, and The Employees. Obviously, the public embraces the other two categories, which are sections of the public.
“ The hospitals’ Boards of Governors are representatives of the contributors to the voluntary non-profit hospitals, though they are neither selected by the contributors nor are their acts in any way directed or controlled by the contributors. The members of these boards are, in most instances, public spirited persons who have volunteered to serve.
“ It is not necessarily a fact that either these Boards or the employees acting jointly are best able to determine the public *312 welfare. But we should be able to assume that the employees acting jointly can determine what is best for their own interests, while the Boards should be able to determine what is best for hospital management.
“ Those two interests may well be in conflict, and when they are, then the public welfare must be the over-riding consideration. It is of course true that in a democracy the rights and welfare of the minority are as important and require as much protection as do the rights and welfare of the majority.”
These answers are before the court and have been given consideration in arriving at the determination hereinafter set forth. This court has been most careful in its deliberation and has given the deep respect due the views of colleagues as expressed in granting the relief out of which these contempt proceedings arose.
The Constitution of New York State was amended by the people on November 8, 1938, effective January 1, 1939, by adding section 17 to article I, said article bearing the title ‘ ‘ Bill of Rights ”. Two sentences of that section 17 bear directly upon the issue herein and the impact of that language cannot be mistaken:
“ § 17. Labor of human beings is not a commodity nor an article of commerce and shall never be so considered or construed.
* # #
“ Employees shall have the right to organize and to bargain collectively through representatives of their own choosing ”. (Italics supplied.)
This amendment was voted by the people in the days of a great economic depression and at a time when labor exploitation was a critical issue. It grants a right to ‘ ‘ employees ’ ’ — a right which is in the present proceedings questioned by petitioners. No legislative enactment; no regulation of statutory bodies or private institutions; no court action, can stand in violation of that command of the State Constitution. Nor should a court permit such explicit language to be rendered meaningless by its action.
This significant amendment was not enacted before, but after the Legislature had acted — with what to this court is an equally clear impact — on the subject of labor disputes and the rights of employees. Section 876-a of the Civil Practice Act was adopted in 1935 (L. 1935, eh. 477) and was clearly designed to limit the courts in granting injunctions in controversies between management and labor. Subdivision 10, as provided *313 by chapter 359 of the Laws of 1939 (immediately after the effective date of the constitutional provision referred to) reads:
‘ ‘ 10. When used in this section, and for the purpose of this section: (a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft or occupation, or who are employees of one employer; or who are members of the same or an affiliated organization of employers of employees; whether such dispute is between one or more employers or associations of employers and one or more employees or associations of employees; between one or more employers or associations of employers and one or more employers or associations of employers; or between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves, any conflicting or competing interests in a ‘labor dispute ’ (as hereinafter defined) of ‘ persons participating or interested ’ therein (as hereinafter defined).
“ (b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it and if he or it is engaged in the industry, trade, craft or occupation in which such dispute occurs, or is a member, officer or agent of any association of employer or employees engaged in such industry, trade, craft or occupation.
“(c) the term ‘ labor dispute ’ includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the relation of employer and employee.”
Can there be any doubt that we here are dealing with a bona fide “labor dispute” under the statute and the Constitution? If so, we seek in vain for any express or implied exemption of voluntary hospitals or other like employers. In fact the Court of Appeals has said in unmistakable language: “ Jurisdiction to issue any such injunction is, in so many words, denied to the courts. It makes no difference who is the plaintiff.” (Schivera v. Long Is. Lighting Co., 296 N. Y. 26, 31.) (Italics supplied.)
Neither in the Constitution’s “ Bill of Rights ” for labor nor in the statutory enactment of section 876-a of the Civil Practice Act do we find any concept of nonprofit institutions ’ exemption. Nor is there any such exemption to institutional employers who care for indigent sick. Jewish Hosp. of Brooklyn v. Doe *314 (252 App. Div. 581) does not truly reflect the operation of the constitutional provision and that of section 876-a of the Civil Practice Act. Nor can the provisions of section 715 of the Labor Relations Act of the State of New York (Labor Law, art. 20) be read into section 876-a of the Civil Practice Act. The exclusion of charitable hospitals from the coverage of section 715 of the Labor Relations Law (enacted by L. 1937, ch. 443, as amd. by L. 1955, ch. 764) in no manner calls for a cross reference and exclusion from the clear inclusive language of section 876-a of the Civil Practice Act. All these provisions must be read in the light of employees’ unqualified constitutional rights of collective bargaining (Matter of Trustees of Columbia Univ. v. Herzog, 181 Misc. 903, revd. on other grounds 269 App. Div. 24; Matter of New York State Labor Relations Bd. v. McChesney, 175 Misc. 95).
The City of New York for its own institutions (city hospitals), in a more isolated and protected area, has recognized the value of the collective recognition of employee spokesmen. And the ghost of threatened strikes, raised by petitioners, is laid to rest in the record of the relations of respondent union through contracts with Montefiore Hospital and Maimonides Hospital. These latter have not suffered any impairment in services by virtue of the contractual relations with defendant union on behalf of the member employees.
Nor is the case of Society of New York Hosp. v. Hanson (185 Misc. 937, affd. 272 App. Div. 998) controlling, because there the employee representatives’ counsel conceded in that case section 876-a was not applicable. If, as this court in conscience is driven to hold, a real labor dispute exists, then no injunction may be granted without the conditions provided in section 876-a being met. Here the complaint concededly fails so to comply.
There is another, and, while possibly regarded as “ technical ”, yet a valid and clear basis for refusing to grant the contempt orders sought. In all but one of the cases here presented, amended complaints were served after the decisions in the injunctive proceedings were rendered. The injunctions ordered on May 25, 1959 were based on the original complaints. On May 21, 1959 amended complaints were served, adding a vital allegation that the defendant union ratified or authorized the acts complained of. This was essential to jurisdiction for the orders .sought (McCabe v. Goodfellow, 133 N. Y. 89; Martin v. Curran, 303 N. Y. 276; 10 Carmody-Wait, New York Practice, p. 532; Wood v. Cook, 132 App. Div. 318). Also in the papers before this court now, defendants Joe Brown (Bronx *315 Hospital), Edward Ayash (secretary-treasurer of defendant union 1199), William J. Taylor (vice-president of defendant union 1199), George Goodman (division director of defendant union 1199) swear they were never served with the petitions calling for their being held in contempt. Further the editor of “ 1199 Drug News ”, Moe Foner, offers an affidavit pointing out his only duties have no connection with the acts complained of.
Section 753 (subd. A) of the Judiciary Law provides that: “ 3. A party to the action * * * or other person * * * for any disobedience to a lawful mandate of the court ’ ’ may be punished for contempt. If, therefore, defendants were within constitutional and statutory recognized conduct in striking and picketing, the instant contempt proceeding must be deemed a nullity. The question is not one of fact, but one of law. The courts must obey the constitutional mandate of section 17 of article I of the State of New York’s Constitution and directions of section 876-a of the Civil Practice Act.
On the argument of these motions to punish for criminal contempt, counsel for petitioners, speaking for all of them, frankly and courageously admitted that the employees had the full right to organize and to become members of a union of their choice. To make that admission and then to refuse to discuss grievances with such collective representatives of the member-employees’ choice, is to render the recognition meaningless. It is in effect telling employees they may freely organize and join a union, pay their dues, but can never have their union speak for them.
There are other vital considerations wholly overlooked by the hospital managements. The State Labor Relations Act expressly preserves to all employees the right to strike (§ 706, subd. 5). The Legislature in enacting section 876-a of the Civil Practice Act gave not the slightest indication of an intent to exempt nonprofit or charitable associations or corporations. Such an exemption could so simply have been written. But with the full impact of the constitutional restriction of 1938 before it, when the statute was amended in 1939, no such limitation was indicated. The courts can neither legislate nor amend statutes when by decision such judicial amendment would contravene the constitutional Bill of Rights to labor. This court will not indulge in such action, and its conscience forbids it to do so in the instant proceedings for criminal contempt.
Employees of voluntary hospitals do not have the protection of civil service laws or procedures. Nor do they have the *316 benefits derived from State or city public service. They must work out their own grievances and redress machinery. That must be done through dealings with the directorial and management staffs of the employer hospitals, none of which is subject to governmental control. Yet the city itself and at least two of the private institutions have and do maintain collective bargaining- relations with the employees’ union. For the management of the hospitals — plaintiffs —to take the course herein which they so forcefully pursue is more an echo of the 19th century than the last half of the 20th century.
Since the court feels impelled to hold that a “labor dispute ” is here in issue within the meaning of section 876-a of the Civil Practice Act the complaints are fatally defective and no injunction or contempt orders may properly be issued thereon. (Boro Park Sanitary Live Poultry Market v. Heller, 280 N. Y. 481, 485-486; Bossert v. Dhuy, 221 N. Y. 342, 365; Exchange Bakery & Restaurant v. Rifkin, 245 N. Y. 260.) Picketing is a form of freedom of speech by labor and may not be restricted by injunction absent other compelling factors not here present. (Senn v. Tile Layers Union, 301 U. S. 468, 478.) Petitioners herein refuse to accept the good faith of defendant union in its stated willingness to waive any and all right to the strike weapon, if collective representation be accepted vby the hospitals. The court cannot so indulge itself. Should such waiver be embodied in an agreement and then be violated, appropriate action can be had from this and other courts. Considerations favorable to this conclusion are found in Young Women’s Christian Assn. v. Rubin (18 Misc 2d 256) and Railway Mail Assn. v. Corsi (293 N. Y. 315, 322-323). Lest there be any doubts on the question of the employees’ wishes anent their union affiliation, the strike vote was by secret ballot in each hospital separately, and the vote was overwhelming on the strike itself. In Mount Sinai the vote was 956 to 59; in Beth Israel, 349 to 8; in Lenox Hill, 372 to 16; in Bronx Hospital, 247 to 6 and in Beth David, 180 to 4.
It is the considered view of this court that the motions to punish for criminal contempt must be denied as a matter of law. Were the determination to be reached as an exercise of discretion the same result would follow.
Orders signed.