PUERTO RICO LABOR RELATIONS BOARD, Petitioner, *v.* CLUB DEPORTIVO DE PONCE, INC., Respondent.

No. 73. Decided February 16, 1962.

*Juan B. Fernández Badillo, Solicitor General,* and *José Orlando Grau, Rafael Buscaglia, Jr., José F. Rodríguez Rivera* for petitioner. *Luis A. Noriega* for respondent.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

This petition hinges on the construction of the terms "employer" and "employee" which the Labor Relations Act clearly defines as follows: [1]

"The term 'employer' shall include executives, supervisors and any person who carries on activities of an executive nature directly or indirectly in the interest of an employer, but shall not include, (except for corporate instrumentalities of the Government of Puerto Rico as hereinafter defined) the Government or any political subdivision of the same; *Provided,* That it shall also include any individual, association or organization intervening in behalf of the employer in any labor dispute or collective bargaining.

"The term 'employee' shall include any employee and shall not be limited to employees of a particular employer, unless the Act expressly provides to the contrary; and shall include any individual whose work has ceased as a consequence of or in connection with any labor dispute, or because of any unfair labor practice, but shall not include any person employed in the domestic service in the home of any family or person, or any

---

[1] Section 2 of Act No. 130 of May 8, 1945 (Sess. Laws, p. 406), as amended by Act No. 6 of March 7, 1946 (Sess. Laws, p. 18; 29 L.P.R.A. § 63). This section, in its pertinent part, was originally approved with the following text:

"The term 'employer' means a person (including corporate instrumentalities of the Government of Puerto Rico) who engages the services of another, and includes any person acting or carrying out activities in the interest of an employer within the scope of his authority, express or implied, but shall not (except for corporate instrumentalities of the Government of Puerto Rico) include the Government or any political subdivision thereof, or any labor organization or anyone acting in behalf of such organization save when it is acting as an employer in fact.

"The term 'employee' shall include any person working for another for hire in Puerto Rico in a non-executive or non-supervisory capacity, and shall not be limited to the employee of a particular employer unless the context clearly indicates otherwise; and shall include any individual whose work has ceased solely as a consequence of or in connection with any current labor dispute or because of any unfair labor practice on the part of an employer and who has not refused or failed to return to work upon the final disposition of a labor dispute or a charge of an unfair labor practice by a tribunal having competent jurisdiction of the same or whose jurisdiction was accepted by the employee or his representative; but shall not include any individual employed in the domestic service of a family or any individual employed by his parent or spouse."

person employed by his parents or spouse. The term shall not include executives or supervisors."

More clearly stated, the problem consists in determining whether a group of unskilled employees of a nonprofit association not engaged in any activity connected with the industrial production may associate of their own free choosing and demand recognition as a contracting unit for the purpose of negotiating labor terms and conditions.

The Club Deportivo de Ponce, Inc. is a nonprofit association engaged in sports, recreational, cultural, and social activities. For these purposes it uses the services of employees in the operation and conservation of a clubhouse, including a night watchman for the property. At an election held under the supervision of the Puerto Rico Labor Relations Board the aforesaid employees chose the Union of Workers of the Gastronomic Industry, Local 610, AFL-CIO, as their representative for the purposes of collective bargaining. The association refused to discuss any agreement upon demand by the union. Based on this refusal, the respondent association was charged with a violation of § 8(1)(a) and (d) of the Labor Relations Act, 29 L.P.R.A. § 69. After the corresponding procedure,[2] the Board dismissed the respondent's contention that it was not covered by the provisions of the Labor Relations Act and issued the corresponding order. In view of the refusal to comply with this order, the Board appealed to this Court requesting its enforcement.

█ In Puerto Rico the workers' right to organize and bargain collectively is at present guaranteed constitutionally. Section 17 of Art. II of the Constitution expressly provides

---

[2] The evidence presented before the examining officer of the Board establishes that the respondent association employs more than 20 persons in the operation and conservation of its buildings and properties, although the bar is operated by an independent grantee, cf. De Arteaga v. Club Deportivo, 73 P.R.R. 407 (1952); that the employees are classified into permanent and probational; and that the respondent makes the deductions required by existing laws for the payment of social security, etc., and in turn it pays the State Insurance Fund quotas.

that "Persons employed by private businesses, enterprises and *individual employers* and by agencies or instrumentalities of the government operating as private businesses or enterprises, shall have the right to organize and to bargain collectively with their employers through representatives of their own free choosing in order to promote their welfare." Hence, the provisions concerning the application—including the exemptions—of labor relations laws and of the limitation of the powers of the courts to issue writs of injunction or restraining orders in a case involving or growing out of a labor dispute should be construed bearing in mind that this right is guaranteed constitutionally. *Mount Sinai Hospital, Inc.* v. *Davis*, 190 N.Y.S.2d 870, 875 (1959) ; *Trustees of Columbia University* v. *Herzog*, 46 N.Y.S.2d 130 (1943) ; *In re New York State Relations Board*, 21 N.Y.S.2d 771 (1940) ; *cf. Américo D. Miranda, Inc.* v. *Falcón*, 83 P.R.R. 708 (1961).

█ The respondent association contends that the declaration of public policy contained in § 1 of the Labor Relations Act, 29 L.P.R.A. § 62, limits the definition of "employer" above transcribed and that, therefore, since it is not engaged in "production," [3] it is not subject to the provisions of the Act.

---

[3] The first paragraph of § 1 reads as follows:

"The public policy of the Government of Puerto Rico as to employment relations and collective bargaining is declared to be as follows:

"(1) It is a fundamental necessity of the people of Puerto Rico to develop its production to the maximum in order to establish the highest possible living standards for the ever-growing population; it is the obligation of the Government of Puerto Rico to adopt such measures as may be conducive to the maximum development of this production and remove the threat that a day might come when, with the continuous increase in the population and the impossibility of maintaining an equivalent increase in production, the people must confront, a hopeless catastrophe; and it is the aim of the Government to develop and maintain such production through the comprehension and education of all the elements composing the people as regards the fundamental necessity of raising production to the limit and of distributing this production as equitably as may be possible; and it is likewise the purpose of the Government to develop in practice the principle of collective bargaining, in such a manner that the basic problem of· the necessity for maximum production can be solved."

We have frequently referred to the declaration of policy of an Act in order to construe its provisions. However, that would not help decisively the respondent in this case because, although the first paragraph of the declaration of policy makes reference to the development of production, the second paragraph advances other factors in order to justify the enactment of the Act, such as that the employees receive "adequate and regular salaries," and it is expressly stated that the achievement of these objectives "depends to a large extent upon fair, friendly and mutually satisfactory relations between employers and employees, and upon the availability of adequate means for the peaceful solution of employer-employee controversies." As respects this declaration on adequate and regular salaries, it was not expressly limited to employees engaged in production. On the other hand, the lawmaker himself enumerated in the definition of "employees" those employees who are excepted from the application of the Act, namely, (1) persons employed in the domestic service in the home of any family or person; (2) persons employed by their parents or spouse; and (3) the executives and supervisors. These exclusions are complemented by the definition of "employer" which excludes the government and its political subdivisions.[4] Truly, if the legislative purpose

---

[4] This exclusion does not cover the corporate instrumentalities of the Government of Puerto Rico referred to in paragraphs 11 and 12 of § 2 of the Act, 29 L.P.R.A. § 63, which read as follows:

"(11) The term 'corporate instrumentalities' refers to the following corporations which have properties belonging to or are controlled by the Government of Puerto Rico: The Land Authority, the Agricultural Company, the Development Bank, the Water Resources Authority, the Puerto Rico Development Company (Industrial Development Company), the Transportation Authority, the Communications Authority, and the subsidiaries of such corporations, and shall also include such similar enterprises and their subsidiaries as may be established in the future, as well as such other government agencies as are engaged or may hereafter engage in lucrative businesses or activities for pecuniary profit.

"(12) If the technical office, or any other employees of the Puerto Rico Aqueduct and Sewer Authority should at the request of the Board of Directors of said Puerto Rico Aqueduct and Sewer Authority and

had been to include in the application of the Act the persons engaged exclusively in the "production" of articles, the reference to the exclusion of the employees in the domestic service would have been unnecessary, since the latter are clearly not engaged in production.

█ It is necessary to establish that the mere fact that an association or corporation is organized without pecuniary profits does not place it outside the operation of labor relations legislation. *Associated Press* v. *National Labor Rel. Board,* 301 U.S. 103, 128–29 (1936) ; *N.L.R.B.* v. *Polish National Alliance,* 322 U.S. 643 (1944) ; *Lucas County Farm Bureau Cooperative Ass'n* v. *N.L.R.B.,* 289 F.2d 844 (C.A. 6, 1961) ; *National Labor Rel. Board* v. *Sun Tent-Luebbert Co.,* 151 F.2d 483 (C.C.A. 9, 1945) ; *National Labor Rel. Board* v. *Holtville I. & C. Storage Co.,* 148 F.2d 168 (C.C.A. 9, 1945) ; *National Labor Rel. Board* v. *Central Disp. & E. Hosp.,* 145 F.2d 852 (C.C.A.D.C. 1944) ; Annot., *Nonprofit Charitable Institutions as Within Operation of Labor Statutes,* 26 A.L.R.2d 1020 (1952). In this connection, the Federal Labor Relations Act was expressly amended by the Taft-Hartley Act to exclude from the definition of "employer" any corporation or association operating a hospital if no part of the net earnings inures to the benefit of a private shareholder. 29 U.S.C.A. § 152; Annot., *Who is "Employer" Within Meaning of Term as Used in Amended National Relations Act,* 1 L. Ed. 2d 2076, 2091 (1957) ; *National Labor Relations Board* v. *Central Dispensary & Emergency Hospital,* 145 F.2d 852 (C.C.A.D.C. 1944), *cert. denied,* 324 U.S. 847 (1945).

---

with the approval of the Personnel Director, be included in the Competitive Service, said Puerto Rico Aqueduct and Sewer Authority shall, with regard to the remaining employees and workmen thereof, and for the purposes of paragraphs 2 and 11 of this section, be considered a corporate instrumentality of the Government of Puerto Rico, and the employees and workmen not included in the Competitive Service shall be entitled to the benefits of this subchapter."

A question similar to that involved in this appeal has been posed in connection with the inclusion or exclusion of charitable associations within the definition of the term "employer" in some of the thirteen states [5] which have adopted local statutes on labor relations similar to the federal statute. As is frequently the case, the opinion on the point is divided. In Pennsylvania it has been held that, inasmuch as the legislative intent is to limit the provisions of the labor relations statute to industrial pursuits, recreational associations are not covered, *Pennsylvania Labor Rel. Bd.* v. *Overbrook Golf Club*, 123 A.2d 698 (Pa. 1956) ; or charitable, *Petition of Salvation Army*, 36 A.2d 479 (Pa. 1944) ; or charitable, *Pennsylvania Labor Rel. Bd.* v. *Mid-Valley Hospital Ass'n*, 124 A.2d 108 (1956). [6] The courts of Massachusetts and Colorado held the same view as respects a hos-

---

[5] The states having local laws on the matter are Colorado, Connecticut, North Dakota, Hawaii, Massachusetts, Michigan, Minnesota, New York, Oregon, Pennsylvania, Rhode Island, Utah, and Wisconsin. See P-H, Labor Relations, States Laws, p. 42001 *et seq.*

In these jurisdictions those persons in the domestic service and those who work with their father or spouse are excluded in the definition of employee. There are other exclusions: (1) employees subject to the Federal Railway Labor Act (Colorado, Hawaii, Michigan, North Dakota, Oregon, and Wisconsin); (2) persons employed during a labor dispute (Colorado, Connecticut, Hawaii, Massachusetts, New York, and Rhode Island); (3) employees in agricultural activities (Connecticut, Massachusetts, Michigan, Minnesota, New York, North Dakota, Oregon, Pennsylvania, Rhode Island, and Utah).

As respects charitable, educational, or religious institutions, the definition of employer excludes them in Connecticut, North Dakota, and Utah. In New York, the exemption appears in Labor Law, § 715; McKinney's Consolidated Laws of New York, p. 566. See *Brooklyn Hebrew Home and Hospital for the Aged* v. *Ottley*, 205 N.Y.S.2d 397 (1960); *Prospect Heights Hospital Inc.* v. *Davis*, 201 N.Y.S.2d 890 (1960); *Mount Sinai Hospital, Inc.* v. *Davis*, 190 N.Y.S.2d 870 (1959); *cf. Application of New York State Labor Rel. Bd.*, 147 N.Y.S.2d 382 (1955); *New York St. Labor Rel. Bd.* v. *Mt. Pleasant W. C. Corp.*, 143 N.Y.S.2d 478 (1955).

[6] Even though the question is the application of the law prohibiting the issuance of injunctions in labor disputes, the same Supreme Court of Pennsylvania held more recently that an association which operated a clubhouse for the promotion of friendship among its members and for

pital engaged in *public* charity, *St. Luke's Hospital* v. *Labor Relations Commission*, 70 N.E.2d 10 (Mass. 1946) ; *St. Luke's Hospital* v. *Industrial Commission*, 349 P.2d 995 (Colo. 1960). On the other hand, in Utah, Wisconsin, and Minnesota a contrary result has been reached which is based mainly on (1) the broad terms in which the definitions of "employer" and "employee" are couched in the statute; and (2) the absence of a specific exemption to the effect even though in all the laws the lawmaker specifically signified his intent not to apply their provisions to particular cases. *St. Joseph's Hospital* v. *Wisconsin Employment Rel. Bd.*, 59 N.W.2d 448 (Wis. 1953) ; *Utah Valley Hospital* v. *Industrial Commission of Utah*, 199 F.2d 6 (C.A. 10, 1952) ; *Utah Labor Relations Board* v. *Utah Valley Hospital*, 235 P.2d 520 (Utah 1951) ; *Wisconsin Emp. Rel. Board* v. *Evangelical Deaconess Society*, 7 N.W.2d 590 (Wis. 1943) ; *Northwestern Hospital* v. *Public Bldg., etc.*, 294 N.W. 215 (Minn. 1940).

■■ The term "employer" contained in laws of this nature should not be so construed as to defeat the objectives of the law. *National Labor Rel. Bd.* v. *Gluek Brewing Co.*, 144 F.2d 847 (C.A. 8, 1944). The broadness of the definition is an unequivocal sign of the intent that in case of doubt preference should be accorded to that interpretation which is compatible with the economic reality sought to be improved instead of limiting the same to the traditional concepts of the definition of "employer," *National Labor Rel. Bd.* v. *Hearst Publications*, 322 U.S. 111 (1944). We can not ignore the clear purpose of the legislative measure seeking to

---

their pleasure and accommodation comes within the definition of employer: *Locust Club* v. *Hotel and Club Employees' Union*, 155 A.2d 27 (Pa. 1959). It was distinguished from the case of *Overbrook Golf Club, supra,* on the basis of the differences in the definition of the term "employer" used in both acts. This distinction is truly quite flimsy and, in our opinion, it is more apparent than real. See Stern, *Background and Public Policy of Pennsylvania Law on Collective Agreements—Unshackling the Hold of the Common Law,* 3 Vill. L. Rev. 441 (1958).

improve the economic conditions of the poverty-stricken classes and the circumstances surrounding the employee-employer relation particularly under consideration. *National Labor Rel. Bd.* v. *E. C. Atkins & Co.*, 331 U.S. 398 (1947); *National Labor Rel. Bd.* v. *Swift & Co.*, 162 F.2d 575 (C.A. 3, 1947).

 The definitions of our Act are sufficiently broad to comprise nonprofit associations among employers subject to its provisions, even though they are not engaged in industrial activities or in production. We reject, as being strict, the position taken by the courts of Pennsylvania and Massachusetts, and we subscribe the construction placed by Utah, Minnesota, and Wisconsin which is more compatible with the conditions prevailing in our medium. We must not overlook the fact that this measure can not be considered isolatedly in relation to the purpose of encouraging production, but that it is part of a series of laws the immediate objective of which is to protect adequately the laborers in their relations with the employer, and especially aimed at improving their living and working conditions.[7] Furthermore, the employee's urge for improvement is similar, whether he works in an industry for production or in activities not connected therewith. His status in the community is equally important

---

[7] We have examined the existing labor legislation in Puerto Rico and none of the definitions of "employer" or "employee" excludes from its benefits the employees of nonprofit associations. See, among other provisions, the following: § 1 of Act No. 99 of June 23, 1955 (Sess. Laws, p. 520; 29 L.P.R.A. § 81) (payments to representatives of employees); § 4 of Act No. 382 of May 11, 1950 (Sess. Laws, p. 876; 29 L.P.R.A. § 140) (prejudicial discrimination for participating in politics or in labor unions); § 6 of Act No. 100 of June 30, 1959 (Sess. Laws, p. 284; 29 L.P.R.A. § 151) (discrimination for age, race, creed, etc.); § 6 of Act No. 17 of April 17, 1931 (Sess. Laws, p. 194; 29 L.P.R.A. § 176) (payment of wages in cash, etc.); § 36 of Act No. 96 of June 26, 1956 (Sess. Laws, p. 622; 29 L.P.R.A. § 246h) (minimum wage); § 19 of Act No. 379 of May 15, 1948 (Sess. Laws, p. 1254; 29 L.P.R.A. § 288) (working day); and § 5 of Act No. 289 of April 9, 1946 (Sess. Laws, p. 682; 29 L.P.R.A. § 299) (day of rest).

and worthy of protection, and we should not deny such protection by a restricted interpretation, particularly in the absence of a clear legislative mandate to that effect. The respondent's argument that the recognition to its employees of the right to associate of their own choosing and to bargain collectively will prevent it from performing its cultural and recreational activities, since it would entail, in the final analysis, an increase of their wages and salaries, is anachronistic. We can not agree that the amusement and recreation of a few be protected at the expense of low salaries for the employees. In this respect, this case does not even present the situation of the employees of hospitals at the service of the public in which undoubtedly there is involved an additional factor to be considered, namely, the uninterrupted service to the patients.[8] It is merely an activity in which the welfare of the citizens in general is not primarily involved, but the mere recreation of a group. Moreover, the interpretation placed by the Board on the statute is reasonable and it can not be said that it does not conform to law. It is therefore entitled to our weight and respect. *Labor Rel. Board* v. *Junta de Muelles*, 71 P.R.R. 143 (1950); *cf. South P.R. Sugar Co.* v. *Sugar Board*, 82 P.R.R. 814, 831 (1961); *Colonos de Caña de Santa Juana, Inc.* v. *Sugar Board*, 77 P R.R. 371, 375 (1954).

Judgment will be rendered enforcing the order of the Puerto Rico Labor Relations Board of May 20, 1960.

---

[8] See *The Nonprofit Hospital and the Union*, 9 Buf. L. Rev. 255 (1960).