JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* CLUB DEPORTIVO DE PONCE, INC., demandado.

*Número:* 73   *Resuelto:* 16 de febrero de 1962

*Juan B. Fernández Badillo, Procurador General* y *José Orlando Grau, Rafael Buscaglia, Hijo, José F. Rodríguez Rivera,* abogados estos últimos de la Junta de Relaciones del Trabajo, abogados todos de la peticionaria; *Luis A. Noriega,* abogado del demandado.

Sala integrada por el Juez Presidente Señor Negrón Fernández como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Este recurso gira en torno a la interpretación de los términos "patrono" y "empleado" que la Ley de Relaciones del Trabajo tersamente define así: [1]

"El término 'patrono' incluirá ejecutivos, supervisores y a cualquier persona que realizare gestiones de carácter ejecutivo en interés de un patrono directa o indirectamente, pero no incluirá, excepto en el caso de las instrumentalidades corporativas del Gobierno de Puerto Rico como más adelante se definen, al Gobierno ni a ninguna subdivisión política del mismo; *Disponiéndose,* que incluirá, además, a todo individuo, sociedad u organización que intervenga a favor de la parte patronal en cualquier disputa obrera o negociación colectiva.

"El término 'empleado' incluirá a cualquier empleado, y no se limitará a los empleados de un patrono en particular, a menos que la Ley explícitamente lo exprese en contrario, e incluirá a cualquier individuo cuyo trabajo haya cesado como consecuencia

---

[1] Artículo 2 de la Ley Núm. 130 de 8 de mayo de 1945, según enmendado por la Ley Núm. 6 de 7 de marzo de 1946, pág. 19, 29 L.P.R.A. sec. 63. Este artículo, en la parte pertinente, fue aprobado originalmente con el siguiente texto:

"El término 'patrono' significa la persona (incluyendo las instrumentalidades corporativas del Gobierno de Puerto Rico) que contrata los servicios de otra, e incluye a cualquier persona que actúe o realice gestiones en interés de un patrono, dentro de los límites de su autoridad, ya sea ésta expresa o implícita; pero no incluye (excepto en el caso de instrumentalidades corporativas del Gobierno de Puerto Rico) al Gobierno ni ninguna subdivisión política del mismo, ni organización obrera alguna o persona que actúe a nombre de tal organización, salvo cuando de hecho actúe como patrono.

"El término 'empleado' incluye a cualquier persona que trabaje en Puerto Rico para otra, mediante paga, en funciones que no sean de carácter directivo o de supervisión, y no se limitará al empleado de un patrono en particular, a menos que el contexto claramente indique otra cosa; e incluirá a cualquier individuo que haya cesado en su trabajo únicamente a consecuencia de una disputa obrera en curso o en conexión con la misma o por motivo de alguna práctica desleal de trabajo por parte de un patrono y que no se haya negado o no haya dejado de regresar a su trabajo luego de la solución definitiva de un conflicto obrero o de una acusación de práctica desleal de trabajo, por parte de tribunal de jurisdicción competente o a cuya jurisdicción se haya sometido por el empleado o su representante, pero no incluirá ningún individuo empleado en el servicio doméstico de una familia ni ningún individuo empleado por sus padres o cónyuge."

de, o en relación con cualquier disputa obrera, o debido a cualquier práctica ilícita de trabajo, pero no incluirá a ningún individuo empleado en el servicio doméstico en el hogar de cualquier familia o persona ni a ningún individuo empleado por sus padres o cónyuge. El término no incluirá ejecutivos ni supervisores."

Más llanamente expuesto, el problema consiste en determinar si un grupo de empleados no diestros de una asociación sin fines pecuniarios y que no se dedica a actividad alguna relacionada con la producción industrial pueden asociarse voluntariamente y demandar reconocimiento como unidad contratante a los fines de negociar sobre términos y condiciones del empleo.

El Club Deportivo de Ponce, Inc. es una asociación sin fines pecuniarios que se dedica a actividades deportivas, recreativas, culturales y sociales. Para estos propósitos utiliza los servicios de empleados en la operación y conservación de un club, incluyendo a un sereno para la propiedad. En una elección celebrada bajo la supervisión de la Junta de Relaciones del Trabajo de Puerto Rico los empleados mencionados seleccionaron a la Unión de Trabajadores de la Industria Gastronómica, Local 610, AFL-CIO, como su representante a los fines de negociación colectiva. La asociación se negó a discutir convenio alguno al ser requerida para ello por la Unión. Fundándose en esta negativa se le imputó a la asociación querellada una violación del artículo 8(1) *a* y *d* de la Ley de Relaciones del Trabajo, 29 L.P.R.A. sec. 69. Luego del trámite de rigor,(²) la Junta desestimó la alegación de la querellada de que no estaba cubierta bajo las disposiciones de la Ley de Relaciones del Trabajo, y dictó la correspondiente

---

(²) La prueba presentada ante el oficial examinador de la Junta establece que la asociación querellada emplea más de veinte personas para operar y conservar sus edificios y propiedades, aunque la cantina es explotada por un concesionario independiente, cf. *De Arteaga* v. *Club Deportivo*, 73 D.P.R. 444 (1952); que los empleados están clasificados en permanentes y probatorios; y que la querellada le hace los descuentos ordenados por las leyes vigentes para pago de seguro social, etc., y a su vez, satisface las cuotas del Fondo del Seguro del Estado.

orden. Ante la negativa a cumplir con esta orden, la Junta recurrió ante este Tribunal en solicitud de que la pongamos en vigor. ■

En Puerto Rico el derecho de los obreros a organizarse y a negociar colectivamente tiene actualmente raíces constitucionales. La sección 17 del Artículo II de la Constitución dispone expresamente que "Los trabajadores de empresas, negocios y *patronos privados* y de agencias o instrumentalidades del gobierno que funcionen como empresas o negocios privados tendrán el derecho a organizarse y a negociar colectivamente con sus patronos por mediación de representantes de su propia y libre selección para promover su bienestar." De ahí que las disposiciones sobre la aplicación—incluyendo las exenciones—de leyes sobre relaciones del trabajo y de limitación de las facultades de los tribunales para expedir órdenes de *injunction* o de entredicho en un caso que envuelva o surja de una disputa obrera deben ser interpretadas teniendo siempre en cuenta que este derecho está garantizado constitucionalmente. *Mount Sinai Hospital, Inc.* v. *Davis,* 190 N.Y.S.2d 870, 875 (1959) ; *Trustees of Columbia University* v. *Herzog,* 46 N.Y.S.2d 130 (1943) ; *In re New York State Relations Board,* 21 N.Y.S.2d 771 (1940) ; cf. *A.D. Miranda, Inc.* v. *Falcón,* 83 D.P.R. 735 (1961). ■

La asociación querellada alega que la declaración de propósitos contenida en el artículo 1 de la Ley de Relaciones del Trabajo, 29 L.P.R.A. sec. 62, limita la definición de "patrono" transcrita precedentemente, y que, por tanto, como no se dedica a la "producción", (3) no está sujeta a las disposiciones

---

(3) El párrafo primero del artículo 1 lee como sigue:

"La política pública del Gobierno de Puerto Rico, en lo que respecta a las relaciones entre patronos y empleados y a la celebración de convenios colectivos, es la que a continuación se expresa:

"(1) Es necesidad fundamental del pueblo de Puerto Rico alcanzar el máximo desarrollo de su producción a fin de establecer los niveles más altos de vida posibles para su población en continuo crecimiento; es la obligación del Gobierno de Puerto Rico adoptar aquellas medidas que conduzcan al desarrollo máximo de esa producción y que eliminen la amenaza

de la ley.    Frecuentemente nos hemos referido a la exposición de motivos de una ley para interpretar sus disposiciones. Sin embargo, ello no ayudaría decisivamente a la querellada en este caso pues, si bien el primer párrafo de la declaración de propósitos hace referencia al desarrollo de la producción, en el segundo párrafo se adelantan otros factores para justificar la aprobación de la ley, como son el de que los empleados reciban "salarios adecuados y seguros", y se indica específicamente que el logro de los mismos "depende en grado sumo de que las relaciones entre patronos y empleados sean justas, amistosas y mutuamente satisfactorias y que se disponga de los medios adecuados para resolver pacíficamente las controversias obrero-patronales." En cuanto a esta declaración sobre salarios adecuados y seguros no se limitó específicamente a empleados dedicados a la producción.    Por otro lado, el propio legislador enumeró en la definición de "empleados" los que estaban exceptuados de la aplicación de la ley, o sea, 1—los individuos empleados en el servicio doméstico en el hogar de cualquier familia o persona; 2—los individuos empleados por sus padres o cónyuge; y, 3—los ejecutivos y supervisores.    Estas exclusiones se complementan con la definición de "patrono" que excluye al Gobierno y a sus subdivisiones políticas.(4)    Ciertamente, si el propó-

de que pueda sobrevenir el día en que por el crecimiento continuo de la población y la imposibilidad de mantener un aumento equivalente en la producción tenga el pueblo que confrontar una catástrofe irremediable; y es el propósito del gobierno desarrollar y mantener tal producción mediante la comprensión y educación de todos los elementos que integran el pueblo respecto a la necesidad fundamental de elevar la producción hasta su máximo, de distribuir esa producción tan equitativamente como sea posible; y es asimismo el propósito del gobierno desarrollar en la práctica el principio de la negociación colectiva, en tal forma que pueda resolverse el problema básico de la necesidad de una producción máxima."

(4) En esta exclusión no están comprendidas las instrumentalidades corporativas del Gobierno de Puerto Rico a que se refieren los incisos 11 y 12 del artículo 2 de la Ley, 29 L.P.R.A. sec. 63, y que leen como sigue:

·"(11) El término 'instrumentalidades corporativas' significa las siguientes corporaciones que poseen bienes pertenecientes a, o que están controladas por, el Gobierno de Puerto Rico:  La Autoridad de Tierras, la Compañía Agrícola, el Banco de Fomento, la Autoridad de Fuentes

sito legislativo hubiese sido incluir en la aplicación de la ley a las personas dedicadas únicamente a la "producción" de artículos, no hubiese sido necesaria la referencia a la exclusión de los empleados dedicados al servicio doméstico, ya que claramente éstos no se dedican a la producción. ■

Es preciso establecer que el mero hecho de que una asociación o corporación se haya organizado sin fines de lucro no la coloca fuera del ámbito de la legislación sobre relaciones del trabajo, *The Associated Press* v. *National Lab. Rel. Bd.*, 301 U.S. 103, 128–129 (1936); *N.L.R.B.* v. *Polish National Alliance*, 322 U.S. 643 (1944); *Lucas County Farm Bureau Cooperative Ass'n.* v. *N.L.R.B.*, 289 F.2d 844 (CA 6, 1961); *National Labor Rel. Board* v. *Sun Tent-Luebbert Co.*, 151 F.2d 483 (CCA 9, 1945); *National Labor Rel. Board* v. *Holtville I. & C. Storage Co.*, 148 F.2d 168 (C.C.A. 9, 1945); *National Labor Rel. Board* v. *Central Disp. & E. Hosp.*, 145 F.2d 852 (C.C.A. D.C. 1944); Anotación, *Nonprofit charitable institutions as within operation of labor statutes*, 26 A.L.R.2d 1020 (1952). A este respecto la Ley Federal de Relaciones del Trabajo fue expresamente enmendada por la Ley Taft-Hartley para excluir de la definición de "patrono" a cualquier corporación o asociación que opere un hospital siempre que ninguna parte de las ganancias netas obtenidas beneficie a

---

Fluviales, la Compañía de Fomento de Puerto Rico (Compañía de Fomento Industrial), la Autoridad de Transporte, la Autoridad de Comunicaciones, y las subsidiarias de tales corporaciones, e incluirá también las empresas similares que se establezcan en el futuro y sus subsidiarias, y aquellas otras agencias del Gobierno que se dedican o puedan dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario.

"(12) Si los empleados técnicos, de oficina y cualesquiera otros de la Autoridad de Acueductos y Alcantarillados de Puerto Rico fueren incluidos en el Servicio por Oposición, a solicitud de la Junta de Directores de dicha Autoridad de Acueductos y Alcantarillados de Puerto Rico y con la aprobación del Director de Personal, en cuanto al resto de los empleados y obreros a la Autoridad de Acueductos y Alcantarillados de Puerto Rico se considerará 'instrumentalidad corporativa del Gobierno de Puerto Rico' para los efectos de los incisos 2 y 11 de esta sección, y los empleados y obreros no incluidos en el Servicio por Oposición tendrán los beneficios de este subcapítulo."

522

un accionista particular. 29 U.S.C.A. sec. 152; Anotación, *Who is "employer" within meaning of term as used in amended National Relation Act,* 1 L. ed. 2d 2076, 2091 (1957); *National Labor Relations Board* v. *Central Dispensary & Emergency Hospital,* 145 F.2d 852 (CCA DC 1944), cert. denegado en 324 U.S. 847 (1945).

Una cuestión similar a la envuelta en el presente recurso se ha planteado en relación a la inclusión o exclusión de sociedades benéficas dentro de la definición del término "patrono" en algunos de los trece estados(⁵) que han aprobado leyes locales sobre relaciones del trabajo similares a la federal. Como ocurre frecuentemente, la opinión al respecto está dividida. En Pennsylvania se ha resuelto que, siendo el propósito legislativo limitar las disposiciones de la ley de relaciones obreras a empresas industriales, no están cubiertas asociaciones que tienen fines recreativos, *Pennsylvania Labor Rel. Bd.* v. *Overbrook Golf Club,* 123 A.2d 698 (Pa. 1956); o caritativos, *Petition of Salvation Army,* 36 A.2d 479 (Pa.

---

(⁵) Los estados que tienen leyes locales sobre la materia son Colorado, Connecticut, Dakota del Norte, Hawaii, Massachusetts, Michigan, Minnesota, Nueva York, Oregón, Pennsylvania, Rhode Island, Utah y Wisconsin. Véase, Prentice-Hall, Labor Relations, States Laws, pág. 42,001 y ss.

En estas jurisdicciones se excluyen en la definición de empleado a los que se dedican al servicio doméstico y a aquéllos que trabajan con su padre o cónyuge. Hay otras exclusiones: 1) empleados sujetos a la Federal Railway Labor Act (Colorado, Hawaii, Michigan, Dakota del Norte, Oregón y Wisconsin); 2) personas empleadas durante una disputa obrera (Colorado, Connecticut, Hawaii, Massachusetts, Nueva York y Rhode Island); 3) empleados en faenas agrícolas (Connecticut, Massachusetts, Michigan, Minnesota, Nueva York, Dakota del Norte, Oregón, Pennsylvania, Rhode Island y Utah).

En cuanto a instituciones con fines caritativos, educativos o religiosos, la definición de patrono los excluye en Connecticut, Dakota del Norte y Utah. En Nueva York la exención aparece en Labor Law, § 715; McKinney's Consolidated Laws of New York, pág. 566. Véanse, *Brooklyn Hebrew Home and Hospital for the Aged* v. *Ottley,* 205 N.Y.S.2d 397 (1960); *Prospect Heights Hospital Inc.* v. *Davis,* 201 N.Y.S. 2d 890 (1960); *Mount Sinai Hospital Inc.* v. *Davis,* 190 N.Y.S.2d 870 (1959); cf. *Application of New York State Labor Rel. Bd.,* 147 N.Y.S.2d 382 (1955); *New York St. Labor Rel. Bd.* v. *Mt. Pleasant W. C. Corp.,* 143 N.Y.S.2d 478 (1955).

1944) ; o benéficos, *Pennsylvania Labor Rel. Bd.* v. *Mid-Valley Hospital Ass'n.*, 124 A.2d 108 (1956).(⁶) En igual sentido se pronunciaron los tribunales de Massachusetts y Colorado en cuanto a un hospital dedicado a la beneficencia pública, *St. Luke's Hospital* v. *Labor Relations Commission*, 70 N.E.2d 10 (Mass. 1946) ; *St. Luke's Hospital* v. *Industrial Commission*, 349 P.2d 995 (Colo. 1960). Por otro lado, en Utah, Wisconsin y Minnesota se ha llegado a un resultado contrario que descansa principalmente en a) los términos amplios en que están concebidas las definiciones de "patrono" y "empleado" en la ley, y 2) la ausencia de una exención específica al efecto aun cuando en todas las leyes el legislador significó específicamente su intención de no aplicar sus disposiciones en determinados casos. *St. Joseph's Hospital* v. *Wisconsin Employment Rel. Bd.*, 59 N.W.2d 448 (Wis. 1953) ; *Utah Valley Hospital* v. *Industrial Commission of Utah*, 199 F.2d 6 (CA 10, 1952) ; *Utah Labor Relations Board* v. *Utah Valley Hospital*, 235 P.2d 520 (Utah 1951) ; *Wisconsin Emp. Rel. Board* v. *Evangelical Deaconess Society*, 7 N.W.2d 590 (Wis. 1943) ; *Northwestern Hospital* v. *Public Bldg., etc.*, 294 N.W. 215 (Minn. 1940).

El término "patrono" contenido en leyes de esta índole no debe ser interpretado en forma tal que se frustren los propósitos de la ley, *National Labor Rel. Bd.* v. *Gluek Brewing Co.*, 144 F.2d 847 (C.A. 8, 1944). La amplitud de la

---

(⁶) Aun cuando se trata de la aplicación de la ley que prohibe la expedición de injunctions en disputas obreras, la misma Corte Suprema de Pennsylvania sostuvo más recientemente que una asociación que opera un club para el desarrollo de las relaciones fraternales entre sus miembros y para propósitos de esparcimiento y diversión de éstos, está comprendida dentro de la definición de patrono. *Locust Club* v. *Hotel and Club Employees' Union*, 155 A.2d 27 (Pa. 1959). Se distinguió del caso de *Overbrook Golf Club*, supra, fundándose en las diferencias en la definición del término "patrono" contenida en ambas leyes. Ciertamente esta distinción es bastante tenue y, a nuestro juicio, es más aparente que real. Véase, *Stern, Background and Public Policy of Pennsylvania Law on Collective Agreements—Unshackling the Hold of the Common Law*, 3 Vill. L. Rev. 441 (1958).

definición es señal inequívoca de la intención de que en casos de duda debe preferirse una interpretación que sea compatible con la realidad económica que se tiende a mejorar en lugar de limitarla a los conceptos tradicionales de la definición de "patrono", *National Labor Rel. Bd.* v. *Hearst Publications*, 322 U.S. 111 (1944). No puede ignorarse el propósito claro que informa la medida legislativa tendente a mejorar las condiciones económicas de las clases más necesitadas y las circunstancias que rodean la relación obrero-patronal que particularmente se considera. *National Labor Rel. Bd.* v. *E. C. Atkins & Co.*, 331 U.S. 398 (1947); *National Labor Rel. Bd.* v. *Swift & Co.* 162 F.2d 575 (C.A. 3, 1947).

Las definiciones de nuestra ley son lo suficientemente amplias para comprender entre los patronos sujetos a sus disposiciones a asociaciones sin beneficio pecuniario, aun cuando no se dediquen a actividades industriales o para la producción. Rechazamos, por estricta, la posición asumida por los tribunales de Pennsylvania y Massachusetts y nos adherimos a la interpretación de Utah, Minnesota y Wisconsin que es más compatible con las condiciones que imperan en nuestro medio. No debe olvidarse que esta medida no puede ser considerada aisladamente en relación con el propósito de estimular la producción, sino que forma parte de una serie de leyes cuyo fin inmediato es proteger adecuadamente a los obreros en sus relaciones con el patrono, y especialmente enderezadas a mejorar sus condiciones de vida y de trabajo.(⁷) Además, las aspiraciones de mejoramiento de un empleado son similares, trátese de uno que trabaja en una

---

(⁷) Hemos examinado la legislación del trabajo vigente en Puerto Rico, y en ninguna de las definiciones de "patrono" o "empleado" se excluye de sus beneficios a los empleados de asociaciones sin fines de lucro. Véanse, entre otras disposiciones, las siguientes: sec. 1 de la Ley Núm. 99 de 23 de junio de 1955, 29 L.P.R.A. sec. 81 (pagos a representantes de obreros); art. 4 de la Ley Núm. 382 de 11 de mayo de 1950), 29 L.P.R.A. sec. 140 (discrimen perjudicial por participación política o en organizaciones obreras); sec. 6 de la Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. sec. 151 (discrimen por razón de edad, raza, religión, etc.); sec. 6 de la Ley

industria para la producción, o de uno que lo hace en actividades desvinculadas con ésta. Su posición en la comunidad es igualmente importante y digna de protección, y no debemos negársela mediante una interpretación restrictiva, especialmente en ausencia de un claro mandato legislativo al efecto. El argumento de la querellada al efecto de que el reconocimiento del derecho a sus empleados a asociarse libremente y a negociar colectivamente le impedirá llevar a cabo sus funciones culturales y de recreo por cuanto entrañará, en fin de cuentas, un aumento de los jornales y salarios de éstos, es anacrónico. No podemos convenir en proteger el esparcimiento y recreo de unos pocos a expensas de salarios bajos para los empleados. En este sentido, este caso ni siquiera presenta la situación de los empleados de hospitales para el servicio del público en el cual hay sin duda envuelto un elemento adicional a considerar, o sea, el servicio ininterrumpido a los pacientes.[8] Se trata meramente de una actividad en la cual no está envuelto primordialmente el bienestar de la ciudadanía en general, sino el mero recreo de un grupo. Además, la interpretación que del estatuto ha hecho la Junta es razonable, y no puede decirse que no se ajusta a ley. Merece, por tanto, nuestra consideración y respeto. *Junta de Relaciones del Trabajo* v. *Junta Administrativa del Muelle*, 71 D.P.R. 154 (1950); cf. *South P. R. Sugar Co.* v. *Junta Azucarera*, 82 D.P.R. 847, 864 (1961); *Colones de Caña de Santa Juana Inc.* v. *Junta Azucarera*, 77 D.P.R. 392, 396 (1954).

*Se dictará sentencia poniendo en vigor la orden de la Junta de Relaciones del Trabajo de Puerto Rico de fecha 20 de mayo de 1960.*

---

Núm. 17 de 17 de abril de 1931, 29 L.P.R.A. sec. 176 (pago de salario en metálico, etc.); sec. 36 de la Ley Núm. 96 de 26 de junio de 1956, 29 L.P.R.A. sec. 246h (salario mínimo); art. 19 de la Ley Núm. 379 de 15 de mayo de 1948, 29 L.P.R.A. sec. 288 (jornada de trabajo); y sec. 5 de la Ley Núm. 289 de 9 de abril de 1946, 29 L.P.R.A. sec. 299 (día de descanso).

[8] Véase, *The Nonprofit Hospital and the Union*, 9 Buf. L. Rev., 255 (1960).