JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* ASOCIACIÓN DE SERVICIOS MÉDICOS HOSPITALARIOS DE YAUCO, INC. h.n.c. HOSPITAL TITO MATTEI y/u HOSPITAL DE ÁREA DE YAUCO, demandados.

*Número:* O-83-517      *Resuelto:* 30 de abril de 1984

*Jesús M. Díaz Rivera,* de la División Legal de la Junta de Relaciones del Trabajo, abogado de la peticionaria; *Manuel A. Núñez,* de *Curbelo & Núñez,* abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

El Sindicato Puertorriqueño de Trabajadores, A.F.C.W., AFL/CIO presentó ante la Junta de Relaciones del Trabajo de Puerto Rico, una petición para la investigación y certifi-

cación de representante relacionada con los empleados de mantenimiento que utiliza la Asociación de Servicios Médicos Hospitalarios de Yauco, Inc. Esta última impugnó la jurisdicción, pero la Junta reconoció a la Asociación patrono dentro del significado del Art. 2, Secs. (2) y (11) de la Ley de Relaciones del Trabajo de Puerto Rico, 29 L.P.R.A. sec. 63(2) y (11). Ordenó elecciones. Una vez celebradas, se certificó al sindicato representante de todos los empleados de mantenimiento que utiliza la Asociación. Una petición igual de representación para los enfermeros no prosperó por no tener suficiente apoyo.

Subsiguientemente el sindicato radicó una querella en la que imputaba al patrono prácticas ilícitas consistentes en rehusarse a negociar —Art. 8, incisos 1(a) y (d) de la Ley de Relaciones del Trabajo, 29 L.P.R.A. sec. 69(1)(a) y (d). Nuevamente la Asociación alegó no ser patrono. Previa recomendación del examinador, la Junta la encontró incursa. Se ha negado a cumplir con esa decisión y la Junta nos pide la pongamos en vigor.

I

La fiel solución de la controversia presentada requiere que expongamos qué es la Asociación y cuál es su relación con el Departamento de Salud.

La Asociación de Servicios Médicos Hospitalarios de Yauco, Inc. es una corporación de fines no pecuniarios cuyos objetivos son el establecer y administrar clínicas, hospitales, laboratorios, dispensarios y facilidades en general para el tratamiento de enfermos, heridos, casos de maternidad y para la prevención de enfermedades; educar a la ciudadanía sobre la mejor utilización de las facilidades médicas y en cuanto a la prevención de enfermedades y accidentes; fomentar la investigación científica y establecer programas de entrenamiento para el personal médico, paramédico, enfermeras y administrativo; ofrecer sus servicios a pacientes médico-indigentes libre de costo y a pacientes privados;

solicitar aportaciones de fondos públicos o privados para ayudar en las labores señaladas; invertir el dinero que reciba en la consecución de sus propósitos y objetivos sin limitación alguna excepto que no podrá utilizarse en beneficio particular de ninguna persona. La corporación no tiene facultad para emitir acciones de capital y tiene una Junta de Directores compuesta por lo menos de 5 miembros.

El 17 de septiembre de 1979 la Asociación pactó con el Departamento de Salud y la Administración de Facilidades y Servicios de Salud un contrato para la operación y administración del Hospital de Área de Yauco por un término de 7 años y de acuerdo con las condiciones allí establecidas. Como compensación por los servicios hospitalarios y ambulatorios que prestaría a pacientes médico-indigentes y a los parcialmente indigentes, el Departamento de Salud proveería parte de los fondos necesarios para la operación. Los servicios médicos a dichos pacientes se pagarían de acuerdo con ciertas fórmulas establecidas en el contrato. Otras cláusulas imponen responsabilidades y obligaciones a una y otra parte. Los empleados de la Asociación son reclutados directamente por ésta a excepción de algunos asignados por el Departamento de Salud a cumplir su año de servicio público. La Asociación no está sujeta a las leyes sobre compra y suministros del E.L.A.

En fin, se trata de un nuevo concepto en etapa experimental, donde se intenta entregar una responsabilidad directa a la comunidad por el manejo y la administración del hospital que habrá de promover servicos de salud a esa comunidad. Aspira reducir los contratiempos que provoca la burocratización de la administración central del Departamento de Salud, a la vez que se aumenten y agilicen los servicios médicos hospitalarios.

## II

A la luz de esta relación contractual especial, ¿qué derechos les asisten a los empleados de mantenimiento?

■ En Puerto Rico los derechos de los obreros a organizarse, a negociar colectivamente, a la huelga, al piquete y a otras actividades concertadas tienen raíces constitucionales. *J.R.T.* v. *Club Deportivo,* 84 D.P.R. 515 (1962); *A.A.A.* v. *Unión de Empleados A.A.A.,* 105 D.P.R. 437 (1976). Nuestra Carta de Derechos así los garantiza:

> *Los trabajadores de empresas, negocios y patronos privados* y de agencias o instrumentalidades del gobierno que funcionen como empresas o negocios privados tendrán el derecho a organizarse y a negociar colectivamente con sus patronos por mediación de representantes de su propia y libre selección para promover su bienestar. (Énfasis nuestro.) Constitución E.L.A., Art. II, Sec. 17.

> A fin de asegurar el derecho a organizarse y a negociar colectivamente, los trabajadores de *empresas, negocios y patronos privados* y de agencias o instrumentalidades del gobierno que funcionen como empresas o negocios privados tendrán, en sus relaciones directas con sus propios patronos, el derecho a la huelga, a establecer piquetes y a llevar a cabo otras actividades concertadas legales.

> Nada de lo contenido en esta sección menoscabará la facultad de la Asamblea Legislativa de aprobar leyes para casos de grave emergencia cuando estén claramente en peligro la salud o la seguridad públicas, o los servicos públicos esenciales. (Énfasis nuestro.) Constitución E.L.A., Art. II, Sec. 18.

■ El legajo constituyente revela que fueron varias las propuestas presentadas en torno a estos derechos y a cuáles obreros protegerían. J. Trías Monge, *Historia Constitucional de Puerto Rico,* Río Piedras, Ed. U.P.R., 1982, T. III, pág. 199 *et seq.*; *A.A.A* v. *Unión Empleados A.A.A.,* supra, págs. 442–448. Una reconocía el unionarse a todos, fueran de empresas privadas o empleados públicos. Otras negaban tales derechos a los empleados públicos, aun a aquellos en empresas de carácter particular explotadas por el Gobierno. Finalmente, la recomendación de la Comisión de la Carta de Derechos incluyó a los empleados de empresas privadas y a los de agencias o instrumentalidades del Gobierno que operaran como empresas o negocios privados. 4 Diario de Se-

siones de la Convención Constituyente 2573 (1952). En lo que a estos últimos respecta, en nada se alteró la versión final, excepto que se sustituyó la palabra "operen" por "funcionen". 3 Diario de Sesiones, *supra*, pág. 1607 *et seq.*

En ningún momento el debate se centró sobre los trabajadores de empresas privadas. Dentro del contexto de las garantías constitucionales los derechos de éstos estaban fuera de discusión. En última instancia, únicamente quedaron más allá del ámbito protector constitucional los trabajadores gubernamentales que desempeñaran sus oficios en el Gobierno, sus agencias o instrumentalidades que no funcionaran como empresas o negocios privados. 4 Diario de Sesiones, *supra*, págs. 2574-2575. D. Fernández, *El ordenamiento y la problemática de la negociación colectiva en el sector público*, 42 Rev. U.P.R. 7, 10 (1973). La Convención Constituyente creyó prudente dejar en manos de la Legislatura el tratamiento que habría de darse a estos empleados excluidos. Trías Monge, *op. cit.*, pág. 206.

### III

■ Por su parte, la Ley de Relaciones del Trabajo de 8 de mayo de 1945, según enmendada, 29 L.P.R.A. sec. 61 *et seq.*, ya reconocía estatutariamente algunos derechos a los obreros. Y sirvió posteriormente para implementar las garantías y derechos reconocidos en nuestra Constitución. Véase 4 Diario de Sesiones, *supra*, pág. 2575.

En su artículo segundo esta ley define al patrono, y con ello su alcance, de la siguiente forma:

> El término "patrono" incluirá ejecutivos, supervisores y a cualquier persona que realizare gestiones de carácter ejecutivo en interés de un patrono directa o indirectamente, pero *no incluirá excepto en el caso de las instrumentalidades corporativas del Gobierno de Puerto Rico como más adelante se definen, al Gobierno ni a ninguna subdivisión política del mismo*; Disponiéndose, que incluirá, además, a todo individuo, sociedad u organización que intervenga a favor de la parte

patronal en cualquier disputa obrera o negociación colectiva. (Énfasis suplido.) 29 L.P.R.A. sec. 63(2).

Más adelante define instrumentalidades corporativas así:

El término "instrumentalidades corporativas" significa las siguientes corporaciones que poseen bienes pertenecientes a, o que estén controladas por, el Gobierno de Puerto Rico: la Autoridad de Tierras, la Compañía Agrícola, el Banco de Fomento, la Autoridad de Fuentes Fluviales, la Compañía de Fomento de Puerto Rico (Compañía de Fomento Industrial), la Autoridad de los Puertos, la Autoridad de Comunicaciones, y las subsidiarias de tales corporaciones, e incluirá también las empresas similares que se establezcan en el futuro y sus subsidiarias, y aquellas otras agencias del Gobierno que se dedican o puedan dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario. 29 L.P.R.A. sec. 63(11).

Del lenguaje transcrito surge que no son patronos el Gobierno ni sus subdivisiones políticas, los cuales quedan fuera de la jurisdicción de la Junta y del alcance de la ley. Son patronos las empresas privadas y sus agentes, las instrumentalidades corporativas del Gobierno y sus subsidiarias —*J.R.T.* v. *Junta del Muelle,* 71 D.P.R. 154 (1950); *A.A.A.* v. *Unión Empleados A.A.A.*, supra— y aquellas otras agencias del Gobierno que se dedican o pueden dedicarse a negocios lucrativos —*J.R.M.* v. *J.R.T.*, 108 D.P.R. 448 (1979).

Lo expuesto refleja que la única forma mediante la cual la Junta carece de jurisdicción sobre la Asociación corporativa demandada es si la consideramos gobierno o subdivisión política de éste, que no sea una de sus instrumentalidades corporativas o agencia que se dedique o pueda dedicarse en el futuro a negocios lucrativos o a actividades que le rindan un beneficio pecuniario. Examinemos la cuestión.

Primeramente, la demandada no es el Gobierno o una subdivisión política a tenor con la Ley de Relaciones del Trabajo y el régimen constitucional de derechos de los trabajadores imperante en nuestro sistema jurídico. El Gobierno y sus subdivisiones políticas son sus distintos poderes, eje-

cutivo, legislativo y judicial, y todos aquellos otros departamentos, agencias, dependencias y subsidiarias de éstos, creados por ley y excluidos de la Ley de Relaciones del Trabajo y los preceptos constitucionales. D. Fernández, *La Junta de Relaciones del Trabajo de Puerto Rico y el sector público*, 43 Rev. Jur. U.P.R. 295, 316 (1974).

■ Segundo, la demandada simplemente es una corporación sin fines de lucro, establecida bajo la Ley de Corporaciones de Puerto Rico, con todos los poderes y prerrogativas tradicionales reconocidas en ésta y en su certificado de incorporación. *J.R.T.* v. *Club Deportivo*, supra. El que haya pactado un contrato de servicios con el Departamento de Salud para administrar el Hospital de Área de Yauco, Inc., no le convierte en subsidiaria de aquél o en una subdivisión política del Gobierno dentro del significado que nuestra Ley de Relaciones del Trabajo y las disposiciones constitucionales exigen.

■ Por otro lado, el hecho de que el director regional para la región 24 de la Junta Federal de Relaciones del Trabajo haya concluido que bajo la Ley Federal de Relaciones del Trabajo es un agente del Gobierno —lo cual excluye su jurisdicción—[1] no nos obliga a interpretar de igual forma el contenido de nuestras disposiciones legales y negarle validez y eficacia a nuestra Constitución.

■ Finalmente, la demandada aduce que por tratarse de un servicio esencial, la salud, es peligroso reconocer a sus empleados los derechos de negociación colectiva, huelga, piquetes y actividades concertadas. En el pasado hemos rechazado similar argumento. *A.A.A.* v. *Unión Empleados*

---

[1] Asociación de Servicios Médicos Hospitalarios de Yauco, Inc. a/k/a Hospital Tito Mattei y Unidad Laboral de Enfermeras y Enfermeros Profesionales de Puerto Rico, Núm. 24-RC-6594. Véanse además: *N.L.R.B.* v. *The Natural Gas Utility District of Hawkins County, Tennessee*, 402 U.S. 600 (1971); *National Transportation Service*, 100 L.R.R.M. 1263 (1979); *New York Institute for the Education of the Blind*, 106 L.R.R.M. 1113 (1981); *Crestline Memorial Hospital Assn.* v. *N.L.R.B.*, 109 L.R.R.M. 3162 (6th Cir. 1982).

*A.A.A.,* supra. La propia Convención Constituyente confrontó y resolvió en contra de ese dilema. 3 Diario de Sesiones, *supra,* pág. 2264 *et seq.* Para la eventualidad de una grave emergencia, cuando están clara y realmente en peligro la salud o la seguridad pública o los servicios públicos esenciales, autorizó la intervención legislativa —Art. II, Sec. 18— y la intervención y regulación por el poder judicial. *A.A.A.* v. *Unión Empleados A.A.A.,* supra.

Por los fundamentos expuestos, *se dictará sentencia y pondrá en vigor la orden de la Junta.*

Los Jueces Asociados Señores Díaz Cruz y Rebollo López no participaron.