GUAYAMA HEALTH MANAGEMENT, INC. y/u HOSPITAL DE ÁREA DE GUAYAMA, demandante y recurrente, *v.* JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, demandada y recurrida.

*Número:* CE-85-812 *Resuelto:* 30 de junio de 1988

146

*Manuel Rivera Méndez*, de *Rivera Tulla & Ferrer*, abogado del recurrente; *Leticia Rodríguez*, abogada de la recurrida.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Recurre ante nos Guayama Health Management, Inc. (en adelante Guayama Health) para cuestionar la jurisdicción de la Junta de Relaciones del Trabajo de Puerto Rico (en adelante Junta) y su determinación de que la empresa recurrente incurrió en prácticas ilícitas al intervenir indebidamente con el derecho de los empleados a organizarse. Por entender que no tenemos la prueba necesaria para decidir correctamente el conflicto jurisdiccional ante nos, devolvemos el asunto a la Junta para que oportunamente resuelva el planteamiento de campo ocupado según toda la prueba pertinente y al amparo de los criterios esbozados por la Junta Nacional de Relaciones del Trabajo (en adelante Junta Nacional) en los casos de patronos con vínculos gubernamentales. *National Transportation Service, Inc.*, 240 N.L.R.B. 565 (1979).

I

Al enterarse que desde el 1ro de octubre de 1982 Guayama Health administraría las facilidades del Hospital de Área de Guayama, en virtud de un contrato otorgado con el Departamento de Salud de Puerto Rico, la Unión que representaba a los empleados del hospital comenzó un proceso de recolección de firmas para certificarse como representante de la Unidad. El enfermero Pablo Bermúdez fue uno de los "delegados" de la organización durante el proceso. El 15 de febrero de 1983 fue despedido supuestamente debido a los pobres resultados obtenidos en las evaluaciones efectuadas desde octubre. Tres (3) días después, Bermúdez presentó ante la Junta un cargo de práctica ilícita de trabajo contra la corporación. Alegó que la razón de su despido se debió a sus

actividades gremiales como recolector de firmas para organizar una unión.

La Oficial Examinadora nombrada por la Junta emitió un informe el 16 de septiembre de 1985, en el cual recomendaba que se ordenara la reinstalación de Bermúdez y se prohibiera a la corporación intervenir con las actividades gremiales de sus empleados. El 27 de noviembre de 1985 la Junta emitió una decisión y orden en la que adoptaba el informe de la Oficial Examinadora. Es de esta decisión que la corporación recurre ante nos.

## II

Al resolver la controversia pendiente partimos de la premisa de que nos encontramos ante un problema complejo, cuyos contornos son difíciles de definir. En el campo laboral, la doctrina de campo ocupado es un área, por definición, susceptible de propiciar conflictos de jurisdicción entre las esferas federales y las agencias del Estado Libre Asociado de Puerto Rico. Véase D. Fernández y C. Romany, *Derecho Laboral: Casos y Materiales*, Río Piedras, Ed. U.P.R., 1987, T. 1, págs. 134–326. En lo posible nos debe animar el deseo de evitar estos conflictos "ahí donde las circunstancias demuestran que no es necesario que ocurra tal choque si se aplica un buen discernimiento". *P.R. Telephone. Co. v. J.R.T.*, 92 D.P.R. 257, 270 (1965).

La jurisdicción de los foros concernidos está definida por los estatutos federales y los puertorriqueños, y no debemos remitir una controversia al foro federal si podemos cumplir con nuestra función judicial responsablemente. La determinación inicial de cuál foro tiene jurisdicción sobre una petición de certificación o una querella sometida por una de las partes es una cuestión de derecho que requiere una investigación cuidadosa de los hechos de cada caso. La experiencia, tanto aquí como en Estados Unidos, confirma que "la

naturaleza del derecho reclamado y el contexto histórico de cada controversia son cruciales para determinar cuándo un estado puede actuar legítimamente, ya sea legislativa, judicial o administrativamente, con respecto a determinada materia de relaciones laborales". (Traducción nuestra.) *Employment Coordinator* Sec. LR 12,261.1, págs. 102, 261.

Con el propósito de asegurar la uniformidad en la reglamentación de materias obrero-patronales, la Ley Federal de Relaciones del Trabajo (en adelante Ley Federal), 29 U.S.C. sec. 141 *et seq.*, otorga jurisdicción exclusiva a la Junta Nacional en asuntos de prácticas ilícitas y representación. *Pradco Caribe, Inc. v. Tapia*, 116 D.P.R. 121, 125–126 (1985); *San Diego Unions v. Garmon*, 359 U.S. 236 (1959). Sin embargo, la aplicación de la ley y, por ende, el ejercicio de esta jurisdicción están limitados por disposiciones estatutarias y administrativas. La Junta Nacional tan sólo ejercerá su jurisdicción sobre aquellas empresas que afectan el comercio interestatal y cumplen con los criterios estatutarios que limitan el alcance de la Ley Federal. Véanse: 29 U.S.C. sec. 152; 29 U.S.C. sec. 164; Fernández y Romany, *op. cit.*, págs. 55–56. Por ejemplo, la Sec. 2(2) de la Ley Federal expresamente excluye de la jurisdicción de la Junta Nacional a cualquier subdivisión política del Gobierno. 29 U.S.C. sec. 152(2). Además, la Sec. 14(c) de la Ley Federal faculta a la Junta Nacional a publicar directrices jurisdiccionales y a declinar ejercer su jurisdicción cuando a base de éstas entiende que el efecto de la empresa sobre el comercio interestatal no es suficientemente sustancial. 29 U.S.C. sec. 164(c). Véase Fernández y Romany, *op. cit.*, pág. 56.

Como la Ley Federal excluye de su aplicación a las entidades gubernamentales, la Junta Nacional no tiene jurisdicción sobre sus asuntos laborales. Por ello, cuando se trata de una entidad privada que mantiene lazos con el Go-

bierno, la Junta Nacional ha desarrollado algunos criterios para decidir si la vinculación es tan estrecha que la priva de jurisdicción. Desde la decisión de *National Transportation Service, Inc.*, supra, la Junta Nacional ha utilizado el criterio general de "control sobre las condiciones de trabajo" para determinar si una entidad que mantiene lazos con el Gobierno puede considerarse "patrono" para efectos de la ley. De acuerdo con este criterio lo importante no es la relación que existe entre la entidad y el Gobierno, o la naturaleza de la empresa, sino el grado de control que mantiene la entidad sobre las condiciones de trabajo y otras materias laborales. La empresa debe poder negociar con los representantes de sus obreros independientemente de la influencia del Gobierno.

■ Al aplicar estos criterios, la Junta ha considerado, entre otras circunstancias: (1) la forma en que se incorpora la entidad; (2) la composición de su Junta de Directores; (3) los propósitos expresos de la entidad al incorporarse; (4) su estructura decisional y la influencia del Gobierno sobre el reclutamiento y retención de sus directores y funcionarios; (5) el origen y la naturaleza de sus fondos; (6) la forma de pago a los obreros; (7) el sistema de cobro por los servicios prestados; (8) la relación entre la entidad y los empleados del Gobierno; (9) los propósitos del Gobierno al contratar con la entidad; (10) el control de la entidad sobre las facilidades que opera, y (11) el grado de independencia de la entidad en cuanto a la toma de decisiones sobre contratación de personal y expansión de servicios.

■ En fin, la determinación de si una entidad es un agente de gobierno e ipso jure excluida del alcance de la Junta Nacional depende de un estudio exhaustivo de los ingredientes que caracterizan cada caso. Véanse, por ejemplo: *Youth Guidance Center*, 263 N.L.R.B. Núm. 146, 111

L.R.R.M. 1242 (1982); *New York Institute for the Education of the Blind*, 254 N.L.R.B. Núm. 85, 106 L.R.R.M. 1113 (1981); *Herbert Lipton Community Mental Health Center*, 258 N.L.R.B. Núm. 5, 108 L.R.R.M. 1081 (1981).

 Si la empresa no está sujeta a la Ley Federal, la Junta puede asumir jurisdicción al amparo de su propio estatuto. *Junta Rel. del Trabajo v. I.L.A.*, 73 D.P.R. 616 (1952); *Asoc. Empl. Bayamón Transit v. Junta Rel. Trabajo*, 70 D.P.R. 292 (1949). Por lo tanto, antes de decidir si la Junta tiene jurisdicción sobre un asunto, es menester examinar las disposiciones estatutarias que limitan el ejercicio de su autoridad. Fernández y Romany, *op. cit.*, pág. 57.

## III

Ante nos Guayama Health sostiene que la decisión de la Junta debe ser revocada por carecer ésta de jurisdicción. Argumenta que ese foro administrativo no puede asumir jurisdicción sin que medie una renuncia expresa de jurisdicción de la Junta Nacional. Por lo tanto, el problema que se nos presenta es determinar si un tribunal o una agencia estatal puede asumir jurisdicción para resolver si una entidad es un "patrono", según la definición de la Ley Federal, en ausencia de una decisión inicial de la Junta Nacional.

 Anteriormente hemos afirmado la facultad de este Tribunal y de la Junta para resolver controversias sobre la jurisdicción local, a la luz de las guías jurisdiccionales adoptadas por la Junta Nacional, sin que se requiera una decisión anterior por ésta última. Véase *J.R.T. v. Milares Realty, Inc.*, 90 D.P.R. 844, 857 esc. 14 (1964). Además, en el caso de autos no nos encontramos ante una situación en que la Junta Nacional no se haya expresado en el pasado. Ante una situación de hechos similar a la presente, en una petición de certificación de los empleados del Hospital de Área de Yauco, el

Director Regional de la Junta determinó que la empresa que operaba la institución bajo contrato con el Departamento de Salud era un agente del Gobierno excluida de su jurisdicción por mandato de ley. Específicamente, y al amparo de los criterios de *National Transportation Service, Inc.*, supra, examinó el grado de control gerencial y fiscal ejercido por el Departamento de Salud sobre la empresa y la naturaleza de sus operaciones. *Asociación de Servicios Médicos Hospitalarios de Yauco, Inc. and Unidad Laboral de Enfermeros y Enfermeras Profesionales de Puerto Rico*, Caso Núm. 24-RC-6594 de 24 de abril de 1981. Anejo 1, págs. 1–2.

En su extensa y bien fundamentada decisión, el Director Regional concluyó que la Asociación de Servicios Médicos Hospitalarios de Yauco no era un patrono de acuerdo con la Ley Federal según cuatro (4) factores principales: (1) el hospital ofrecía servicios a pacientes indigentes de acuerdo con las normas de elegibilidad y calidad establecidas por el Gobierno; (2) estaba subsidiado con fondos públicos; (3) estaba sujeto a control operacional y presupuestario por parte del Gobierno, y (4) estaba sujeto, igualmente, a control gerencial por el Departamento de Salud.[1]

---

[1] En su decisión, el Director Regional de la Junta de Relaciones del Trabajo de Puerto Rico señaló:

"Al determinar si una entidad es una subdivisión política dentro de la Sección 2(2) de la Ley, la Junta ha establecido que determinará si el *patrono* cumple con la definición de 'patrono' en la Sección 2(2) de la ley y, si así fuera, determinará si el Patrono tiene suficiente control sobre las condiciones de trabajo de sus empleados, que le permita negociar con una organización laboral que los represente. *National Transportation Service, Inc.*, 240 NLRB 565 (1979). Y, de acuerdo con lo señalado por el Tribunal Supremo, la Junta considerará si dicha entidad es una de dos cosas: '(1) creada por el [E]stado, para constituir un departamento o una rama administrativa del [G]obierno, o (2) 'administrada por individuos que son responsables a oficiales públicos o al electorado general . . .' *NLRB* v. *The Natural Gas Utility District at Hawkins County, Tennessee*, 402 U.S. 600 (1971). En el récord está claro que en este caso el manejo por el Patrono de la instalación pública se limita principalmente a proveer servicios médicos especializados y servicios de hospital a pacientes indigentes que residen en la 'zona de

De estas conclusiones se desprende que la determinación estuvo fundamentada en una extensa prueba documental sobre el control real y efectivo ejercido por el Departamento de Salud sobre la gerencia de la empresa. En el caso de autos, cualquier conclusión sobre el grado de independencia gerencial dependerá de unas determinaciones particulares sobre estos extremos.

Un examen de la decisión de la Junta Nacional en el caso de Yauco y de otras análogas, en las cuales la Junta Nacional ha aplicado los criterios rectores de *National Transportation Service, Inc.*, supra, revela que hay suficientes antecedentes judiciales y administrativos para que la Junta resuelva inicialmente el planteamiento jurisdiccional sin necesidad de que medie previamente una renuncia expresa de la Junta Nacional.

Sin embargo, de los autos no surge que la Junta permitiera a las partes aportar prueba sobre el grado de control ejercido por el Departamento de Salud sobre la empresa que administraba el hospital. La Junta limitó su análisis del planteamiento jurisdiccional a unas breves referencias al caso anterior de *J.R.T. v. Asoc. Servs. Médicos Hosp.*, 115 D.P.R. 360 (1984). El asunto requiere una mayor consideración por el foro administrativo y una investigación más cuidadosa del grado de control efectivamente ejercido por el Departamento de Salud sobre el hospital.

---

Yauco', sujeto al sistema de servicios de salud pública del gobierno local; el Patrono trabaja con fondos públicos; y está sujeto al control minucioso de sus operaciones y presupuesto de parte del gobierno del Estado Libre Asociado de Puerto Rico. Más aún, como 'el Estado, a fin de cuentas ejerce un control significativo sobre . . . los gastos [del Patrono] por razón de requerírsele que someta presupuestos con antelación al año fiscal y estar sujeto a los procedimientos de auditoría,' determinó que el Patrono en este caso es un agente del Estado Libre Asociado de Puerto Rico y, por lo tanto, desestimaré la petición. *The New York Institute for the Education of the Blind*, 254 NLRB Núm. 85. En vista de lo cual, encuentro que es innecesario determinar las cuestiones levantadas sobre la unidad en este caso." (Traducción nuestra.) Anejo 1, pág. 2.

En estas circunstancias, procede que revoquemos la decisión de la Junta y devolvamos el caso para que nuevamente examine el planteamiento jurisdiccional. Su próxima intervención no debe limitarse a un análisis comparativo de los contratos suscritos por Guayama Health y el de la Asociación de Servicios Médicos Hospitalarios de Yauco. La controversia requiere un estudio a fondo tanto del contrato entre ellos como de la relación que realmente se ha desarrollado entre las partes.

Aunque el contrato entre Guayama Health y el Departamento de Salud no es idéntico al de la Asociación de Servicios Médicos Hospitalarios de Yauco, ambos son muy parecidos en cuanto al grado de control gerencial que retiene el Departamento de Salud sobre la empresa.

Por ejemplo, el Departamento de Salud conserva control sobre la preparación y aprobación del presupuesto de la empresa. La fuente principal de fondos de la empresa es el Departamento de Salud y parte de su personal continúa adscrito a la Administración de Facilidades y Servicios de Salud (A.F.A.S.S.). Los fondos así asignados son depositados en un banco designado por el Departamento de Salud y es a éste a quien se le acreditan los intereses devengados en la cuenta. La corporación debe someter un informe trimestral de todas sus operaciones para la aprobación del departamento. Éste audita las operaciones fiscales de la corporación y es el que tiene el poder decisivo sobre el sistema de contabilidad de la empresa. Por último, todo el sistema de personal, incluyendo las clasificaciones y las escalas salariales, tiene que ser previamente aprobado por el Departamento de Salud.

No obstante este análisis preliminar, el récord no permite concluir si Guayama Health es un "patrono" o una entidad pública de acuerdo con la ley. *Corresponde que devolvamos este caso a la Junta para que las partes aporten prueba sobre todos estos extremos, de modo que ese foro administra-*

*tivo resuelva si tiene jurisdicción sobre esta controversia al amparo de los criterios esbozados por la Junta Nacional.*

El Juez Asociado Señor Negrón García concurre con el resultado con opinión escrita. El Juez Asociado Señor Rebollo López disiente con opinión escrita, a la cual se une el Juez Asociado Señor Ortiz.

—O—

Opinión concurrente del Juez Asociado Señor Negrón García.

I

Coincidimos con el Tribunal en que se debe devolver a la Junta de Relaciones del Trabajo de Puerto Rico (en adelante Junta) el caso para que dicho organismo lo evalúe nuevamente a la luz de nuestra decisión en *J.R.T. v. Asoc. Servs. Médicos Hosp.*, 115 D.P.R. 360 (1984). Al acoger ese curso de acción mayoritario, creemos menester exponer brevemente la norma jurisdiccional de dicha Junta en casos de práctica ilícita de trabajo que bordean la jurisdicción de la Junta Nacional de Relaciones del Trabajo (en adelante Junta Nacional).

Ciertamente la Ley Federal de Relaciones del Trabajo (en adelante Ley Federal), 29 U.S.C. sec. 141 *et seq.*, confiere jurisdicción *exclusiva* a esa Junta Nacional sobre cuestiones de representación, 29 U.S.C. sec. 159(c), y sobre prácticas ilícitas de trabajo, 29 U.S.C. sec. 160. A esos efectos, el Tribunal Supremo federal ha resuelto que cuando la práctica ilícita está estatuida en la Ley Federal, o cuando una actividad está protegida por dicha ley, la jurisdicción para conocerlas le compete *exclusivamente* a ella de acuerdo con la doctrina de campo ocupado. *San Diego Unions v. Garmon*, 359 U.S. 236 (1959).

También dicho Foro ha decidido que el Congreso, al investir a la Junta Nacional con jurisdicción única sobre

asuntos laborales que afecten el comercio interestatal, ha desplazado completamente el poder de los estados para lidiar con aquellos asuntos en los cuales la Junta Nacional *ha declinado u obviamente declinará ejercer su jurisdicción*, esto es, no ha *cedido* su jurisdicción *conforme a la Sec. 10(a) de la Ley Federal*, 29 U.S.C. sec. 160(a). Según ese esquema, una junta *local* de un estado no tiene *ningún poder* para considerar dichos asuntos aun cuando la Junta Nacional se haya negado a considerarlos. Véanse: *Guss v. Utah Labor Board*, 353 U.S. 1 (1957); *Meat Cutters v. Fairlawn Meats*, 353 U.S. 20 (1957); *San Diego Unions v. Garmon*, supra.

Con posterioridad a estos casos, el Congreso enmendó la Sec. 14 de la Ley Federal, 29 U.S.C. sec. 164, para añadir el inciso (c) que autoriza a la Junta Nacional a declinar jurisdicción mediante *reglamentación publicada* o mediante *normas establecidas en decisiones (rules of decisions)* sobre cualquier disputa laboral que involucre cualquier *tipo o categoría* de patronos donde, a juicio de la Junta Nacional, *el efecto de dicha disputa laboral en el comercio no es suficientemente sustancial para garantizar el ejercicio de su jurisdicción.* 29 U.S.C. sec. 164(c). Esta Sec. 14 de la Ley Federal, *supra*, *expresamente* permite a los estados (incluso Puerto Rico) asumir jurisdicción en dichos casos.

Nuestra decisión en *J.R.T. v. Asoc. Servs. Médicos Hosp.*, supra, no puede interpretarse como que en cualquier caso que la Junta Nacional decida no intervenir en la disputa laboral, la junta local tiene libertad para hacerlo. Allí, nuestros pronunciamientos estuvieron apuntalados en que ese caso no versaba sobre una situación en donde la Junta Nacional hubiera *declinado* ejercer su jurisdicción, sino en que dicha Junta Nacional concluyó que la Asociación de Servicios Médicos Hospitalarios de Yauco *era un agente del Gobierno*. Como sabemos, la Sec. 2(2) de la Ley Federal, 29 U.S.C. sec. 152(2), *excluye expresamente* de la jurisdicción de la Junta Nacional a las entidades públicas o sus dependencias. A con-

secuencia de ese mandato ipso jure es que evaluamos dicho caso según la ley local. A tal efecto dijimos:

> Por otro lado, el hecho de que el director regional para la región 24 de la Junta Federal de Relaciones del Trabajo haya concluido que bajo la Ley Federal de Relaciones del Trabajo es un agente del Gobierno —*lo cual excluye su jurisdicción*— no nos obliga a interpretar de igual forma el contenido de nuestras disposiciones legales y negarle validez y eficacia a nuestra Constitución. (Escolio omitido y énfasis suplido.) *J.R.T. v. Asoc. Servs. Médicos Hosp.*, supra, pág. 367.

Desde esa perspectiva es cuestionable que la Junta y los tribunales tengan jurisdicción en aquellos casos donde *argüiblemente* se presenten asuntos sujetos a las Secs. 7 u 8 de la Ley Federal, 29 U.S.C. secs. 157 ó 158, si la Junta Nacional decide declinar jurisdicción. Máxime cuando la norma claramente establecida por el Tribunal Supremo federal no lo permite, a menos que la *cesión* de jurisdicción se haga según la Sec. 10(a) de la Ley Federal, *supra,* o se *decline la jurisdicción* en los casos autorizados por la Sec. 14(c)(1), (29 U.S.C. sec. 164(c)(1)), en la misma ley. Esta doctrina de *San Diego Unions v. Garmon*, supra, fue ratificada por este Tribunal tan recientemente como en *Pradco Caribe, Inc. v. Tapia*, 116 D.P.R. 121 (1985).

## II

Aclarado este vital extremo, el récord no permite concluir si el Guayama Health es o no un patrono o una entidad pública. La comparación entre los hechos de este caso y *J.R.T. v. Asoc. Servs. Médicos Hosp.*, supra, es tenue. Debe depurarse ante la Junta las diferencias entre la relación de la Guayama Health con el Departamento de Salud para precisar si debemos apartarnos de *J.R.T. v. Asoc. Servs. Médicos Hosp.*, supra.

—O—

Opinión disidente emitida por el Juez Asociado Señor Rebollo López, a la cual se une el Juez Asociado Señor Ortiz.

Disentimos. Somos del criterio que, dados los hechos particulares del presente caso, no le corresponde a este Tribunal ni a la Junta de Relaciones del Trabajo de Puerto Rico (Junta) pasar juicio sobre qué esfera, la federal o la local, es la que tiene jurisdicción para entender en el presente caso; ello, conforme la jurisprudencia aplicable del Tribunal Supremo de E.U., le corresponde hacerlo, en primera instancia, a la Junta Nacional de Relaciones del Trabajo (Junta Nacional).

Entendemos que el erróneo curso de acción tomado por una mayoría de los integrantes del Tribunal en el presente caso —al devolver el mismo a la junta local con el propósito de que ésta "reevalúe" el aspecto jurisdiccional— desafortunadamente es el producto de sentimientos de índole "nacionalista", los cuales les impiden aceptar *la realidad jurídica* dentro de la cual se desenvuelve nuestro Puerto Rico bajo su vigente sistema de gobierno y sus relaciones actuales con el Gobierno de Estados Unidos.

I

Mediante decisión de fecha 27 de noviembre de 1985, la Junta le ordenó a la aquí recurrente Guayama Health Management, Inc., en síntesis, cesar y desistir, intentar intervenir, restringir y ejercer coacción con sus empleados en el ejercicio de sus derechos a organizarse para negociar colectivamente; cesar y desistir de desalentar la matrícula de la Unión Laboral de Enfermeras y Enfermeros Profesionales de Puerto Rico mediante discriminación en el empleo por pertenecer a dicha organización obrera; reinstalar al Sr. Pablo Bermúdez García en su antigua posición en el Hospital de Área de Guayama, y fijar copia de un aviso en los tablones

de edictos del referido hospital a los efectos antes mencionados por un período de treinta (30) días.

Inconforme, la recurrente acudió ante este Tribunal imputándole a la Junta la comisión de dos (2) errores, a saber:

> *Erró la Honorable Junta de Relaciones del Trabajo de Puerto Rico, al asumir jurisdicción en el presente caso sin mediar renuncia expresa de la Junta Nacional de Relaciones del Trabajo en virtud de lo dispuesto en 29 USC Sec. 164(c)(1) y (c)(2).*

> *Erró la Honorable Junta de Relaciones del Trabajo de Puerto Rico al determinar que el despido del querellado, Pablo Bermúdez García, se debió a un discrimen en la tenencia de empleo de éste por parte de la corporación recurrente y no a la pobre labor rendida en sus funciones, como Enfermero Profesional durante el período probatorio.* Solicitud de Revisión, pág. 4.

## II

La mencionada decisión y orden de la Junta tiene como trasfondo un proceso de recolección de firmas —con el propósito de radicar ante la Junta una petición de elecciones y certificación— iniciado por la unión que representaba a los empleados del Hospital de Área de Guayama bajo la administración del Departamento de Salud de Puerto Rico, al enterarse la organización obrera que la institución médica pasaría a ser administrada por la corporación recurrente en virtud de un contrato a esos efectos que otorgaron con el referido Departamento de Salud.

El empleado Pablo Bermúdez García participó en dicho proceso de recolección de firmas, siendo el "delegado" del piso de medicina del referido hospital. El señor Bermúdez fue despedido de su empleo por alegadamente no ser su trabajo satisfactorio. Dicho despido se llevó a cabo, incluso, con posterioridad a un periodo probatorio de tres (3) meses que

la propia corporación recurrente había establecido al hacerse cargo de la administración del hospital. El señor Bermúdez radicó, a través de la Unión, un cargo de práctica ilícita de trabajo basado en el Art. 8(1)(a) y (c) de la Ley de Relaciones del Trabajo de Puerto Rico, 29 L.P.R.A. sec. 69(1)(a) y (c).

La oficial examinadora de la Junta concluyó que el despido del señor Bermúdez se debió a sus actividades gremiales y que al así actuar la corporación recurrente incurrió en prácticas ilícitas de trabajo en violación al Art. 8(1)(a) y (c) de la Ley de Relaciones del Trabajo de Puerto Rico, ante; determinación que, como hemos visto, adoptó la Junta, emitiendo la decisión y orden que ante nos cuestiona la recurrente.

Plantea la corporación recurrente la falta de jurisdicción de la Junta en virtud de la doctrina de "campo ocupado". Específicamente que, encontrándose la corporación recurrente dentro del marco jurisdiccional establecido por la Junta Nacional para los hospitales, por afectar sus operaciones el comercio interestatal, dicha Junta Nacional está investida de poder exclusivo cuando se trata de prácticas ilícitas de trabajo y, por lo tanto, la asunción de jurisdicción por parte de la Junta en el presente caso es improcedente en derecho. Cita en apoyo de su contención la Cláusula de Comercio, Art. I, Sec. 8, Const. E.U., L.P.R.A., Tomo 1; la Cláusula de Supremacía, Cl. 2, Art. VI, Const. E.U., L.P.R.A., Tomo 1, y la Sec. 14(c)(1) y (c)(2) de la Ley Federal de Relaciones del Trabajo (Ley Federal), 29 U.S.C. sec. 164(c)(1) y (c)(2). Se señala, en adición, que la corporación recurrente cumple con el *standard* jurisdiccional establecido por la Junta Nacional para asumir jurisdicción sobre hospitales privados, o sea, ingresos brutos anuales por la cantidad de $250,000. *Medical Center Hospital*, 168 N.L.R.B. Núm. 52 (1967), C.C.H. N.L.R.B. Pár. 21,915; *East Oakland Commu-*

*nity Health Alliance, Inc.*, 218 N.L.R.B. Núm. 193 (1975), C.C.H. N.L.R.B. Pár. 15,981.

La recurrida Junta, por su parte —en apoyo de su posición de que actuó con jurisdicción en el presente caso— descansa en la decisión que emitiéramos en *J.R.T. v. Asoc. Servs. Médicos Hosp.*, 115 D.P.R. 360 (1984). En dicho caso resolvimos —*luego que la Junta Nacional rehusara asumir jurisdicción por entender que dicha Asociación era un agente del Gobierno del Estado Libre Asociado de Puerto Rico*— que una corporación que operaba un hospital público, igualmente por contrato con el Departamento de Salud de Puerto Rico, era un "patrono" a la luz de las disposiciones pertinentes de nuestra Ley de Relaciones del Trabajo,[1] teniendo derecho sus empleados a organizarse, a negociar colectivamente y demás actividades concertadas, y, en su consecuencia, teniendo jurisdicción la Junta para intervenir ante un reclamo de la unión sobre comisión de práctica ilícita por parte de la Corporación en controversia.

Mediante resolución a esos efectos, le concedimos término a las partes para que nos ilustraran sobre aspectos del caso que resultaban de singular importancia para la correcta solución del mismo. Ambas partes han comparecido. El Tribunal en el día de hoy resuelve devolver el caso a la Junta para que ésta "reevalúe" su posición a la luz de unas confusas y contradictorias directrices contenidas en la opinión mayoritaria. Dicha acción, a nuestro juicio, es completamente errónea.

---

[1] Al así resolver, expresamos que el hecho de que la agencia federal hubiera resuelto que la corporación en controversia era un "agente del Gobierno de Puerto Rico" —y por tanto no cualificaba como "patrono" al amparo de las disposiciones de la ley federal— "no nos obliga a interpretar de igual forma el contenido de nuestras disposiciones legales y negarle validez y eficacia a nuestra Constitución". *J.R.T. v. Asoc. Servs. Médicos Hosp.*, 115 D.P.R. 360, 367 (1984).

## III

La Sec. 2(2) de la Ley Federal(2) excluye de la jurisdicción de la Junta Nacional a los "patronos" o entidades públicas. Cuando éstos contratan con corporaciones o entidades privadas el ofrecimiento y suministro de servicios gubernamentales, surge la interrogante de si esa entidad o corporación privada igualmente está exenta de la jurisdicción de la Junta Nacional. Ello crea tensión, por cuanto causa controversia entre el derecho de los empleados de la industria a ejercer todos los derechos que precisamente le concede la Ley de Relaciones del Trabajo y la política pública de que los servicios básicos gubernamentales no se vean afectados por huelgas, etc. El problema se complica por cuanto *en relación a situaciones como las que plantea el presente caso* la Junta Nacional se ha negado a utilizar el "procedimiento consultivo" que por reglamento a esos efectos estableciera,(3) mediante el cual la referida Junta Nacional, ante solicitud de parte, "contesta" la consulta sobre si ha de ejercer o no jurisdicción en un caso en particular. Véanse: *In re Puerto Rico Telephone Company*, 267 N.L.R.B. Núm. 8 (1983); *International Union of Operating Engineers, Local 34, AFL-CIO and Minnesota Employees of City and County Agencies (MECCA) and Douglas County Hospital*, 266 N.L.R.B. Núm. 53 (1983).

Para lidiar con esta situación en los méritos, la Junta Nacional ha establecido, a través de los años, varios criterios

---

(2) 29 U.S.C. sec. 152(2):

"The term 'employer' includes any person acting as an agent of an employer, directly or indirectly, *but shall not include the United States or any wholly* owned Government corporation, or any Federal Reserve Bank, *or any State or political subdivision thereof,* or any person subject to the Railway Labor Act [45 U.S.C. sec. 151 *et seq.*], as amended from the time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization." (Énfasis suplido.)

(3) Véanse: Secs. 102.98 y 102.99 de las Reglas y Reglamentos de la Junta Nacional de Relaciones del Trabajo, Serie 8, según enmendado.

(*tests*). *El criterio vigente* fue formulado por dicha Junta Nacional en el caso de *National Transportation Service, Inc.*, 240 N.L.R.B. 565 (1979). *El mismo se compone de dos (2) partes o pasos.* En primer lugar, la Junta Nacional determina si la entidad cualifica bajo la definición de patrono que contiene la antes citada Sec. 2(2) de la Ley.[4] Contestada dicha interrogante en la afirmativa, la Junta Nacional pasa a determinar, como segundo paso, si dicho patrono tiene suficiente control sobre las condiciones de empleo de sus empleados como para poder negociar con una organización obrera que los represente.[5]

La determinación de la Junta Nacional asumiendo o no jurisdicción en esta clase de situaciones resulta importante y crítica. En caso afirmativo, como es sabido, el patrono queda sujeto a las disposiciones del *National Labor Relations Act* y sus empleados adquieren todos los derechos garantizados por dicha ley. En adición tenemos que todas las leyes estatales no armonizables o inconsistentes con dicha ley quedan desplazadas, *Plankinton Packing Co. v. Wisconsin Employment Relations Board*, 338 U.S. 953 (1950).

## IV

En *J.R.T. v. Asoc. Servs. Médicos Hosp.*, ante, se trataba de una corporación —la Asociación de Servicios Médicos Hospitalarios de Yauco, Inc.— que, al igual que la corporación aquí concernida, pactó mediante contrato a esos efectos

---

[4] Analizado ello desde otra perspectiva, la Junta Nacional de Relaciones del Trabajo tendrá que determinar si el patrono como tal no es una subdivisión política del Gobierno o una corporación completamente controlada por el Gobierno, etc.

[5] Dicho criterio (*test*) en las propias palabras de la Junta Nacional, "it would *determine* whether the employer itself meets the definition of 'employer' in Section 2(2) of the Act and, if so, *determine* whether the employer has sufficient control over the employment conditions of its employees to enable it to bargain with a labor organization as their representative". (Énfasis suplido.) Anejo 1, pág. 2.

con el Departamento de Salud la operación y administración de una institución hospitalaria perteneciente al Gobierno de Puerto Rico, el Hospital de Área de Yauco. En ocasión de una petición de representación radicada ante la Junta Nacional por la Unidad Laboral de Enfermeras y Enfermeros Profesionales de Puerto Rico, en relación con los enfermeros graduados empleados por la Asociación, la Junta Nacional desestimó la mencionada petición al concluir que bajo la Ley Federal dicha entidad Corporativa (la Asociación) no caía dentro de la definición de "patrono" y sí se consideraba un "agente del Gobierno", lo cual excluía su jurisdicción.

El punto (*issue*) clave a determinarse, esto es, si la referida entidad corporativa se consideraba o no una "subdivisión política" del Estado Libre Asociado de Puerto Rico, fue determinado por la Junta Nacional al amparo del criterio (*test*) establecido por la propia junta en el citado caso de *National Transportation Service, Inc.*, ante.

Al así hacerlo, la Junta Nacional *tomó en consideración cada uno de los términos y condiciones establecidos en el contrato pactado entre la referida Asociación y el Departamento de Salud,* señalando, al declinar jurisdicción, como factores decisivos: que la operación por la Asociación de la facilidad envuelta se limitaba esencialmente a proveer servicios médico-hospitalarios especializados a pacientes indigentes residentes en el área de Yauco, bajo el sistema de salud pública del gobierno del Estado Libre Asociado de Puerto Rico; que la Asociación era principalmente subsidiada por fondos públicos; que la misma estaba sujeta a un estrecho control operacional y presupuestario por parte del Estado Libre Asociado de Puerto Rico; que el Estado ejercía un control significativo sobre los gastos de la Asociación debido a la radicación por adelantado de presupuestos del año fiscal requerido por aquél, y que le eran aplicables procedimientos de auditoría estatales.

Habiendo rehusado asumir jurisdicción la Junta Nacional en el referido caso por la razón antes expresada, quedó expedito el camino para que la agencia local asumiera posteriormente jurisdicción en el mismo ante el reclamo de la organización obrera, con el resultado antes expuesto. *J.R.T. v. Asoc. Servs. Médicos Hosp.*, ante.

## V

Como hemos visto, la Junta Nacional basó su determinación a los efectos de que la Asociación de Servicios Médicos Hospitalarios de Yauco, Inc. era un "agente o subsidiaria" del Gobierno de Puerto Rico —la cual, a su vez, la llevó a declinar jurisdicción en el caso— *en las particulares cláusulas y condiciones del contrato que dicha Asociación celebrara con el Departamento de Salud de Puerto Rico.*

En vista de ello, estimamos que lo procedente es que se examinen y se comparen las cláusulas y condiciones del contrato otorgado por la recurrente Guayama Health Management, Inc., con el referido Departamento de Salud con el propósito de determinar si las mismas son básica y sustancialmente iguales a las del contrato en el caso de la Asociación o si, por el contrario, existen diferencias entre dichos contratos que justifiquen la posición de la corporación recurrente a los efectos de que ésta es "argüiblemente" un patrono y no una subdivisión política del Gobierno, lo que a su vez pudiera llevar a la Junta Nacional a una decisión contraria. Ello resulta necesario ya que, de ser dichas cláusulas y condiciones sustancialmente iguales, se podría razonablemente inferir que la Junta Nacional hubiera seguido el mismo curso de acción que en el citado caso de *J.R.T. v. Asoc. Servs. Médicos Hosp.*, ante; esto es, que hubiera declinado igualmente su jurisdicción en el presente caso. Ello es así por cuanto se presume que los organismos cuasi judiciales —como lo es la Junta Nacional— son consistentes en sus pronunciamientos, adhiriéndose a los precedentes por

ellos establecidos. Véanse: *International Union (UAW) v. N.L.R.B.*, 459 F.2d 1329 (D.C. Cir. 1972); *Telecommunications Research & Action Ctr. v. F.C.C.*, 801 F.2d 501 (D.C. Cir. 1986). De ser dichas cláusulas y condiciones sustancialmente distintas no se podría hacer dicha inferencia, en cuyo caso la decisión, en primera instancia, sobre si la Junta Nacional asumiría o no jurisdicción en el caso le corresponde hacerlo, naturalmente, a dicha Junta Nacional.

Examinemos, pues, las cláusulas de los dos (2) contratos en controversia:

1) La Asociación de Servicios Médico[s] Hospitalarios de Yauco, Inc. (en adelante "la Asociación") contrató como una corporación *sin* fines pecuniarios con el Estado Libre Asociado de Puerto Rico y su Departamento de Salud.

La aquí recurrente, Guayama Health Management, Inc. (en adelante "Guayama Health"), contrató como corporación *con* fines pecuniarios con el Departamento de Salud para llevar a cabo la administración y operación del Hospital de [Á]rea de Guayama.

2) "La Asociación" acepta la operación y administración del Hospital de [Á]rea de Yauco dentro del concepto de las normas y reglamentaciones que ha emitido el Secretario de Salud.

La "Guayama Health" acepta la operación y administración del Hospital de [Á]rea de Guayama de acuerdo al contrato y a los procedimientos que la corporación prepare y someta al Departamento para su aprobación. Esto conlleva la preparación de procedimientos para el manejo de personal, sistema de records médicos, dietas, servicios de enfermería, mantenimiento, limpieza, "staffing patterns", admisiones, servicios clínicos, contabilidad, presupuesto, facturación y cobro y otros sistemas financieros y cualquier otro relacionado con las operaciones del Hospital, cuyos sistemas establecidos por la corporación pasarían a ser propiedad del Departamento al finalizar el contrato, hecho significativo de que los anteriores procedimientos no se emitieran de forma igual a los existentes en el Departamento de Salud.

3) "La Asociación" se obligó a proveer servicios médico-hospitalarios y ambulatorios a nivel secundario a la población

médico-indigente del [Á]rea de Yauco, o a pacientes que pudiesen pagar privadamente mediante seguros tales servicios, todo ello bajo la condición de que existiesen facilidades y recursos disponibles para que no se menoscabare el servicio a pacientes médico-indigentes que son la responsabilidad primaria del Departamento.

La "Guayama Health" prestaría dichos servicios médicos a pacientes médico-indigentes, parcialmente indigentes y/o privados que pudiesen pagar en igualdad de condiciones y tomando como consideración única para la prestación de dichos servicios solamente la condición de salud del paciente, por lo que el criterio primario regente era la condición de salud del paciente y no la indigencia.

4) Aunque "la Asociación" podía cobrar directamente a los pacientes solventes por servicios de hospitalización, dicha cantidad así cobrada se depositaba en la misma cuenta donde se mantenían los fondos operacionales que el Departamento de Salud le asignaba a la Asociación.

La "Guayama Health" puede cobrar directamente a dichos pacientes solventes sin otro requisito que llevar un registro apropiado para la contabilización de esos ingresos.

5) Como compensación por los servicios médicos que prestaba a pacientes médico-indigentes, "La Asociación" recibía unas cantidades sujetas a unas fórmulas determinadas en función de los salarios anuales pagados a los médicos de cabecera de los distintos departamentos.

A la "Guayama Health" se le paga una cantidad de $458,333.33 mensuales por todos los servicios que se ofrecen a dichos pacientes médicos-indigentes, independientemente de consideraciones salariales o fórmulas variables.

6) Los empleados de "la Asociación" no podían participar de los ingresos que generase la operación del Hospital de Yauco.

Los empleados del Hospital de Guayama tienen la oportunidad de participar de los ingresos que generase la "Guayama Health" mediante un plan de incentivos al efecto.

7) A "la Asociación" se le exigía mantener un grupo administrativo y paramédico para la operación y administración de las facilidades del Hospital de [Á]rea de Yauco que fueran compatibles con las normas del Departamento de Salud.

La "Guayama Health" podía nombrar o contratar el personal médico y paramédico que fuera necesario para llevar a cabo las funciones del Hospital de [Á]rea de Guayama sin restricción alguna. Todos los empleados lo serán de la Corporación, excepto los empleados de carrera de las AFASS que continúen prestando sus servicios como tales en el Hospital, los cuales se regirán por el Reglamento de AFASS, pero serán supervisados por la gerencia de la Corporación. Esta gestión de contratación conllevaba la facultad y responsabilidad de entrenar, ascender y destituir cuando fuere necesario a dichos empleados, así como también establecer escalas de salarios, reglamentos de personal y beneficios marginales dentro de los límites presupuestarios.

8) A "la Asociación" se le exigía implantar y mantener sistemas de información administrativa y financiera que fueran compatibles con los sistemas del Departamento.

La "Guayama Health" prepararía sus propios procedimientos para el manejo y administración del Hospital de [Á]rea de Guayama, incluyendo la capacidad de establecer un procedimiento para el referido de pacientes (en conjunción con el Departamento), la preparación de normas de admisión al Hospital y todas las anteriormente mencionadas en el apartado 2, ante.

9) A "la Asociación" se le exigía que el equipo que instalara de forma permanente en la estructura del Hospital pasaría a ser propiedad del Estado por constituir ésta una mejora permanente.

La "Guayama Health" tenía el derecho de que dicho equipo fuese adquirido por el Departamento de Salud por el valor del mismo en los libros al finalizar el contrato. Tenía además la potestad de adquirir equipo fijo sin el visto bueno del Departamento de Salud.

10) En el contrato suscrito con "la Asociación", el Departamento de Salud tenía la potestad de declarar vencido el mismo o suspender su vigencia temporeramente a su entera voluntad.

El contrato suscrito con la "Guayama Health" podía ser terminado por cualquiera de las partes efectivo al final de cada año fiscal mediante notificación por escrito de la parte que deseare dar por terminado el mismo a la otra parte con por lo

menos seis meses de antelación. Además, la "Guayama Health" también retenía el derecho a poder enmendar en cualquier momento (de mutuo acuerdo) el contrato, cuyas condiciones económicas podían ser negociadas entre las partes con sesenta días de antelación al finalizar cada año fiscal. (Énfasis suplido.)

## VI

Una somera lectura de lo antes expuesto es más que suficiente para poder uno percatarse de que la situación de hechos que plantea el presente caso *no es una similar* a la del caso *J.R.T. v. Asoc. Servs. Médicos Hosp.*, ante. Examinado el mismo a la luz del criterio (*test*) establecido por la Junta Nacional en el mencionado caso de *National Transportation Service, Inc.*, ante, somos de la opinión que la Corporación recurrente, cuando menos prima facie, cualifica bajo la definición de "patrono" de la Sec. 2(2) de la Ley Federal, ante, y que la misma aparentemente posee suficiente control sobre las condiciones de empleo de sus empleados como para poder negociar con una organización obrera.

Aquí —en primer lugar y en relación con el primer paso del criterio (*test*) establecido en el caso de *National Transportation Service, Inc.*, ante— no se trata de una entidad creada por el Estado de manera que constituya un departamento o rama administrativa del Gobierno. Es una corporación con capacidad y existencia propia como toda corporación creada con arreglo a las disposiciones de la Ley General de Corporaciones, con todas las facultades que ésta les garantiza. Tampoco es administrada por individuos que le son responsables a oficiales públicos o al electorado, ya que, no obstante existir una Junta Consultiva de la Comunidad nombrada por el Secretario de Salud, la cual se encarga de evaluar la labor realizada por la Corporación, los negocios de la Corporación recurrente son dirigidos por sus accionistas, quienes ejercen las funciones de Junta de Directores, la cual

a su vez delega sus poderes en un Director Ejecutivo contratado por la Corporación misma. No se desprende que este último esté sujeto ni a nombramiento, ni a remoción por el Secretario de Salud ni por oficial público alguno. Véase *N.L.R.B. v. The Natural Gas Utility District*, 402 U.S. 600 (1971).

Por otro lado —y en relación con el segundo paso de dicho criterio (*test*)— la Corporación recurrente posee o retiene la facultad y responsabilidad de entrenar, ascender y destituir cuando fuere necesario al personal médico y paramédico que nombre o contrate, así como también establecer escalas de salarios, reglamentos de personal y beneficios marginales dentro de los límites presupuestarios. Esto a nuestro juicio, constituye prima facie "suficiente control sobre las condiciones de empleo de sus empleados como para poder negociar con una organización obrera que los represente".

En resumen, tenemos que las diferencias obviamente existentes entre ambos contratos podrían, en nuestra opinión, haber causado que la Junta Nacional —contrario al caso de la Asociación de Servicios Médicos Hospitalarios de Yauco, Inc.— hubiera asumido jurisdicción en el asunto ya que, como hemos visto, la recurrente Guayama Health Management, Inc. ha ofrecido evidencia suficiente para sostener que la misma "argüiblemente" es un patrono bajo la Ley Federal y no una subdivisión política del Gobierno. *San Diego Unions v. Garmon*, 359 U.S. 236 (1959). Dicha situación, a nuestro juicio, es suficiente para que este Tribunal, y la Junta de Relaciones local, se abstengan de asumir jurisdicción en el asunto. *En otras palabras, esa es una decisión que le corresponde hacer, en primera instancia, a la Junta Nacional; ciertamente la misma no es de la competencia ni de la Junta ni de este Tribunal.* Véanse: *International Longshoremen's Assoc. v. Davis*, 474 U.S. 380 (1986); *Pantoja v. Esco Corp.*, 100 D.P.R. 51, 53 (1971). Devolver el caso a la junta local para que ésta "decida" si es ella, en lugar de la

Junta Nacional, la que tiene jurisdicción en este caso es un acto que no sólo es erróneo, sino que es uno completamente fútil pues el organismo local no es el que tiene la facultad para decidir ese aspecto en primera instancia; correspondiéndole el mismo, repetimos, a la Junta Nacional.

## VII

Por las razones antes expresadas, expediríamos el auto de revisión solicitado y dictaríamos sentencia revocatoria de la resolución y orden emitida en el presente caso por la Junta de fecha 27 de noviembre de 1985.